## JAMES M. MORRISON et al., Appellants, v. TURNBAUGH.

### Division One, December 21, 1905.

1. **PRACTICE: Equity: Ruling on Evidence.** Even in equity cases the ruling of the chancellor on objections to evidence should be more definite than "Proceed," "Subject to Objection," etc.

2. **———: Summons by Publication: Residence Not Known.** It is not necessary, as a preliminary step to bringing suit by publication in a tax suit, that a summons issue and a *non est* return be made, in order to determine whether or not the defendant is a non-resident. The affidavit of non-residence is one of the statutory conditions precedent for the order of publication.

3. **———: ———: ———: Status.** Besides, it is not necessary, in a subsequent suit in which the sufficiency of the tax deed to carry the title is brought in question, to decide whether the order of publication operated to bring a resident defendant into court, if the evidence does not show that he was at that time a resident.

4. **TAXATION: Description in Assessment: Division of Tracts Into Lots.** Irregularity in assessing property for taxation by describing the tract by the lots into which it is divided, such as lots 1 and 2 of a certain quarter section, does not render void the suit for taxes and the deed made in pursuance thereto. At most, it only renders them voidable, and in a collateral proceeding, such as a suit to quiet title, brought against the purchaser at the tax sale, such irregularity is not available. Besides, the tax proceeding being evidently aimed at the quarter section, the words "lots 1 and 2" may be treated as descriptive only.

5. **———: Judgment and Deed: Wrong Middle Letter of Name: Equity.** The petition, the order and proof of publication, and the publication itself properly described the record owner as George M. Johnson, and the judgment was against G. W. Johnson, and the deed recites such judgment and adopts the error. *Held,* that this misprision of the clerk did not render the judgment void, for it could have been corrected by a *nunc pro tunc* order on the data in the clerk's office, and equity considers that as done which should have been done.

6. ——: ——: ——: **Statute of Jeofails.** In view of the Statute of Jeofails, which provides that no judgment upon failure to answer shall be reversed, impaired or in any way affected by reason of any mistake in the name of any party when the correct name "shall have been once rightly alleged in the pleadings or proceedings," a tax judgment against G. W. Johnson, in a suit wherein the record owner's name of George M. Johnson was correctly stated, in the petition, order and proof of publication and the publication itself, to be George M. Johnson, cannot be set aside even in a direct proceeding.

7. ——: **Middle Initial.** The middle initial of a name is not considered important in identifying the person sued for taxes.

8. ——: **Payment of Taxes: Diligence.** The payment of taxes for twenty-five years by the purchaser at a tax sale, while not sufficient to entitle him to invoke the thirty-year statute, yet is significant if acquiesced in by the record owner. The law rewards the diligent.

Appeal from Stoddard Circuit Court.—*Hon. J. L. Fort, Judge.*

AFFIRMED.

*Robert L. Wilson* for appellants.

(1) Appellants insist that at the date of the institution of the suit, judgment, execution and delivery of the tax deed by sheriff to respondent, George M. Johnson was a citizen of the State of Missouri. If so, he should have been proceeded against by summons and not by publication until a return of *non est* was had, or an affidavit that said George M. Johnson so concealed himself that the ordinary process of law could not be served upon him. In addition, the affidavit does not comply with section 575 or section 2022, Revised Statutes 1899. Murdock v. Hillyer, 45 Mo. App. 278. Morrison's testimony fully establishes that in 1866 George M. Johnson was a resident of Iron county, Missouri, and did not remove to the State of Illinois until about 1896. It is a well-established principle of law that the original domicile continues until it is fairly changed for another. Walker v. Walker, 1 Mo. App. 104; 14

Cyc. Law and Proc., 851; State v. Finn, 4 Mo. App. 356; State v. Sanders, 106 Mo. 188. (2) Appellants insist further that respondent acquired no title by said sale. The judgment and deed did not follow the petition. The petition was a suit against George M. Johnson. The judgment was against G. W. Johnson. The execution was against G. W. Johnson, and the deed conveyed away the property of G. W. Johnson. The middle initial letter has frequently been held by our courts as no part of a person's name but the common law held that every person had a Christian name and a surname. It is held in this State, following the common law, that but one Christian or baptismal name is recognized. An initial letter before the name or after the name may be omitted, but there must be the baptismal name as well as the surname. Nolan v. Taylor, 131 Mo. 224; Corrigan v. Schmidt, 126 Mo. 304; Chamberlain v. Blodgett, 96 Mo. 478; Skelton v. Sackett, 91 Mo. 377. If the baptismal and surname are not set out in full the tax deed will be void. Sweazy v. Nettles, 2 Mo. 6.

*Mozley & Wammack* for respondent.

(1) The petition in the tax suit was filed in the circuit court in 1878, and was against George M. Johnson, and properly described the land sought to be impressed with the State's lien, and certainly was sufficient to confer jurisdiction on the court of the subject-matter. The affidavit for publication alleges "that George M. Johnson, the defendant, is a non-resident of this State." At the time of the institution of this suit for back taxes, to entitle the plaintiff to a publication, the law required "the plaintiff or other person for him, to allege in his petition or file an affidavit, stating that part of all of the defendants are non-residents of the State." 2 Wagner's Statutes 1870, p. 1008. The statute of 1879 makes exactly the same provision for publication. R. S. 1879, p. 597. The affidavit in this case was a

full compliance with the law. Allen v. Ray, 96 Mo. 542; Tufts v. Valkening, 51 Mo. App. 8. The order of publication was published for four successive weeks in the Enterprise Messenger, the last insertion being more than fifteen days before the term of court to which defendant was cited to appear, and was directed to George M. Johnson, and described the land and the general nature and object of the suit. The order of publication in this case was sufficient and it makes no difference whether defendant was a resident or a non-resident, the plaintiff having elected to proceed against him as a non-resident, and having filed an affidavit with his petition alleging that George M. Johnson was a non-resident of the State. Tooker v. Leake, 146 Mo. 419; Russell v. Croy, 164 Mo. 69; Ratliff v. McGee, 165 Mo. 461. The publication being regular in all things, brought defendant, George M. Johnson, into court, and gave the court complete jurisdiction in the premises. The defendant, and the property sought to be impressed with the lien of the State, being properly before the court, it rendered judgment in the premises, which by an error was recorded as against G. W. Johnson, but was in all other respects regular, so far as we are able to observe. The error having crept into the judgment, it was but the sequence of events that it should follow in the subsequent proceedings, and we find Dr. Turnbaugh buying the land described in the petition, and the order of publication, as the land of G. W. Johnson. (2) Proceedings to enforce tax liens are not strictly *in rem*, but are to be proceeded with as ordinary actions against real estate. Gitchell v. Kreider, 84 Mo. 472. The petition, the order of publication, the judgment, the execution and the sheriff's deed in the case at bar all properly describe the land and meet the requirements of the law. The middle letter or initial does not constitute any part of a person's name, and hence the letter "W" in the judgment and subsequent proceedings instead of the letter "M" does not tend to show that it did not have

reference to the identical George Johnson who was sued and brought into court by publication. Corrigan v. Schmidt, 126 Mo. 304. (3) Judgments of circuit courts in tax suits are entitled to the same presumptions indulged as to all other judgments, and are not open to collateral attack. Brown v. Walker, 11 Mo. App. 226; Railroad v. View, 156 Mo. 618; Stevenson v. Black, 168 Mo. 558. The land in suit constituted but one tract and was so assessed. Even if there were more than one tract described in the proceedings, appellants cannot reach such a defect in a collateral proceeding, such as they have here. Jones v. Driskill, 94 Mo. 199. And so it has been held that the neglect of the sheriff to sell the land by its smallest legal subdivisions does not invalidate the sale. Wellshear v. Kelley, 69 Mo. 355; Brown v. Walker, 11 Mo. App. 226, 85 Mo. 262. (4) Our statute (R. S. 1899, sec. 672) provides "that no judgment shall be reversed, impaired, or in any way affected for any mistake in the name of any party or person, etc., when the correct name, etc., shall have been once rightly alleged in any of the pleadings or proceedings."

LAMM, J.—This is a suit to quiet title to the northwest quarter of section 6, township 28, range 12, in Stoddard county, and was treated as an equity case.

The petition sets forth that James M. Morrison has a curtesy interest in the land, that his co-plaintiffs are his children and have interests in remainder, subject to said curtesy, and claim title; that he is their trustee; that plaintiffs have been in open, notorious, adverse, exclusive and continuous possession of the land under claim and color of title for more than ten years last past; and that defendant claims some title, estate or interest, the nature of which is unknown to plaintiffs and cannot be described except that it is adverse and prejudicial to plaintiffs.

The answer is in form of a general denial, coupled

with a claim of ownership by defendant, and, further, alleging that plaintiffs' claim is based on a deed from one G. M. Johnson of Jackson county, Illinois, but that "the witness thereto" and the notary acknowledging said deed were unacquainted with him; did not know the grantor to be G. M. Johnson; that he was not the G. M. Johnson who at one time owned the land and "had no connection with" him; and that the said deed was void and ineffective for the purpose of conveying any title to the premises.

The replication put in issue the new matter in the answer.

On pleadings thus outlined the trial was had and a decree entered in favor of defendant in October, 1902, from which plaintiffs duly appeal.

It appeared at the trial that George M. Johnson held a patent to the land from the government, date undisclosed, and it was admitted he was the common source of title.

It stands admitted likewise that James M. Morrison is the husband of Ida A. Morrison, deceased, and that his co-appellants are their children. Mrs. Morrison's will, probated in Cape Girardeau county in 1899, was introduced in evidence and established the fact that James M. Morrison was testamentary trustee of his co-appellants, and that they were remaindermen in all real estate of which testatrix died seized.

No proof was introduced sustaining the allegation in the petition of appellants' possession for the statutory period of ten years. To the contrary, their title, as alleged in the answer, was shown by the proofs to be solely based on a purported deed from George M. Johnson to said Ida A. Morrison in October, 1897, presently to be considered. Possession was straightway taken by Mr. Morrison under this deed on behalf of his wife, then alive, and he deadened some timber, cleared some ground and built two houses, afterward destroyed by fire. So that the Statute of Limitations is not in the

case; because there was no possession prior to 1897 in appellants or their testamentary ancestor under color of title, and no such possession as disseizors that could have ripened into title by limitation.

On the other hand, the Statute of Limitations is not in the case on respondent's side; for while respondent claims ownership, yet he does not claim the Statute of Limitations as creating title in him. In fact, the land up to 1897, at least, was wild, uninclosed timber. Respondent had cut and sold some timber therefrom, since 1880, but his claim of title is based exclusively on tax proceedings begun in the circuit court of Stoddard county against George M. Johnson, ripening into a judgment, a sale, and a sheriff's deed to him in 1880, presently to be considered.

Not losing sight of the foregoing admissions and uncontroverted facts, the case made on the residue of the evidence is as follows:

Appellants produced in evidence a warranty deed from George M. Johnson to Ida A. Morrison, consideration $200, dated October 2, 1897, and recorded December 13th, 1897 (wherein the grantor is described as "of the county of Jackson, State of Illinois, a widower, party of the first part"), conveying the real estate in question.

This deed is signed thus: "George M. Johnson," and bears the following earmark: "signed, sealed and delivered in the presence of Robert L. Wilson." It was acknowledged on the day of its date by John F. Woody, a notary public of Cape Girardeau county, who certified, *inter alia,* as follows: "on this second day of October, 1897, before me personally appeared George M. Johnson, a widower, to me known to be the person described in and who executed the foregoing instrument," etc.

This deed was objected to by respondent "because not executed by George M. Johnson who at one time

192 sup—28

owned this land and because there was no witness to his mark.'' On which objection the court ruled thus: ''Subject to objection.''

Appellants next offered the will of Ida A. Morrison and the probate thereof in the common pleas court of Cape Girardeau county. To the introduction of this will, respondent objected that she had no title and therefore conveyed none and because ''the will had not been recorded in this county'' (Stoddard) ''where the lands are situate.'' On this objection the court ruled thus: ''Proceed.''

The will is lengthy. Its terms are immaterial, further than that it shows, as said, that James M. Morrison is the trustee for testatrix's and his own children, his co-appellants, of all testatrix's real estate.

James M. Morrison, being produced and sworn as a witness, testified, in chief, that he knew defendant Turnbaugh; that he knew the property in controversy On being asked whether at the commencement of the suit defendant claims any interest in the premises, he answered, ''He claimed it, but I didn't recognize it.'' On being asked what information he got of respondent's claim, he answered, ''I looked in the records,'' and continued, ''Yes, sir, he claimed to own the land; he claimed under a sheriff's deed; tax title.''

On cross-examination he said that he saw on the records that respondent had no title; that the sheriff's deed was on record at the time; that he didn't think the sheriff's deed was worth anything; that he knew George M. Johnson since 1866; first saw him in Jackson, Missouri; afterwards saw him in Stoddard county. Witness here described his looks as a medium-sized man about thirty or thirty-one years old, dark-haired when he first knew him; when he saw him last he was aged sixty-six or sixty-seven and his hair was tinged with gray; that he weighed about 155 pounds; had gray eyes and a brunette complexion. On being asked, ''After you became acquainted with him in 1866, how long was

you acquainted?" he answered that he stayed around —lived in Iron county; that he came down and said that he owned this land in 1868; he lost sight of him in 1870; last saw him in 1897; had not seen him from 1870 to 1897, nor heard of him nor known of his whereabouts; knew nothing of him for twenty-seven years. Then this happened: "Q. You formed the acquaintance of a man who said his name was George M. Johnson, in 1897, didn't you?" To this question the witness vouchsafed no answer. On being pressed, his answer was, "Yes, sir, I knew it was him. Q. Did you recognize him when he met you? A. Not until he told me. Q. You met a man who told you his name was George M. Johnson, did you? A. Yes, sir, and I recognized him afterwards." The witness, continuing, said he met him at Big Springs at the city of Cape Girardeau about the 27th of September, 1897, and that was the first time and place he had met him for twenty-seven years or had heard anything about him; that in four or five days thereafter he got the deed in question; that at that time Johnson was not as fleshy as he had been; had been sick and was sick then. Being inquired of about the $200 consideration in the deed, he testified he gave Johnson a horse and the balance in money— $140 in cash and $60 "worth of horse." That before that, in 1884, he had found out that George M. Johnson had never sold this land, and that he got this fact from the records. On being asked the following question: "Q. And you were endeavoring to acquire a conveyance of these lands, weren't you?" he replied, "No, sir, not *particular.*" That he had merely written to the land office at Ironton to find out if there were any vacant lands in southeast Missouri; that he was engaged in picking up lands here and there when he could get them cheap and that he had followed that as a business for twenty years. On being inquired of whether the witness to the deed or the notary was acquainted with the party who executed the deed as grantor, he answered,

"They were only acquainted with him by what he told them—he was talking to them about the country." On being further inquired of, he answered that the notary and such witness were not acquainted with the person that he knew of; that they were in the presence of the notary and said witness a half hour; that the horse belonged to the witness and the money belonged to Mrs. Morrison; that Johnson said he had been living in Jackson county, Illinois; that he had been there only a year and was on his way to Oklahoma, and added, "Then he went right on west;" that he claimed that he had been a resident of Jackson county during the year 1896 and part of the year 1897; that he (witness) had never paid any taxes on the land but went to pay them after he got the deed and always found them paid; that he knew some person was paying them; that at one time when in Bloomfield he was subpoenaed (to have his deposition taken) and on his returning to Cape Girardeau and informing his counsel, he was asked if he had any money tendered him to pay his way back and forth and, on his saying no, his counsel told him he didn't have to go; that Johnson told him during his acquaintance with him in 1866 to 1870 that he lived in Iron county, Missouri. On being inquired of as to the extent of his acquaintance with Mr. Johnson during that period, he answered that he saw him "two or three or four times;" that he did not go to Iron county to see him but that Johnson came in 1868 to Jackson, Missouri, and stayed all night at the house of witness's father: that the witness and a colored man had gotten over the line on his land (making rails) and Johnson came there with another man; that the way he came to recognize Johnson in 1897 was that Johnson asked him (witness) if he didn't remember the time he went into the woods and showed him he was making rails over the line. Thereupon witness replied to Johnson, "Yes, I remember it." It was after this that witness recognized Johnson in 1897 and he testi-

fied that the only way he had of knowing him at that time was by Johnson's telling him said circumstances.

On re-examination, the witness said he brought Johnson to Judge Wilson's office (where the notary was), introducing him to Mr. Wilson and the notary as G. M. Johnson and on the strength of such introduction Woody took the acknowledgment; that at that time there was a personal resemblance in the man to the Johnson he had known before; that witness lived at Cape Girardeau thirty years; was a member of the city council for seven years; that the land was all woods in 1897; and that the betterments now on the land were a clearing and seventy acres of timber deadened.

Such, substantially, is appellants' case.

On respondent's offering the deposition of one Hughes, appellants' counsel interposed an objection directed to the competency and relevancy of the questions and answers. On this objection the court ruled, thus: "Proceed."

By Hughes it was shown that he lived in Jackson county, Illinois; had been county surveyor of that county continually since 1894; was as well acquainted as any man in that county; that he knew no man named George M. Johnson and never knew such a man in that county; that he would have known if such a man lived in that county in 1897; that witness was in all parts of the county and had made it a point to see every citizen over twenty-one years of age; that he did this in the fall of 1896 and gave it as his opinion that had such a man lived in the county, he could not have escaped witness's knowledge, and referred his exact information to polling the entire vote and making it a point to know every man in the county of voting age.

The deposition of one Wells was then read. Wells testified he lived in Jackson county, Illinois, for thirty years and was sheriff there in 1897; was and is now one of the best acquainted men in that county; that no such man as G. M. Johnson lived there in 1896 to his know-

ledge; that if he had lived there he was sure that he would have known him; that he had never known such a man but had known several men by the name of Johnson, but none of the initials of "G. M." He also referred to the practice of polling voters as the occasion of his accuracy of information and the precision with which he spoke. He testified, furthermore, that he had made inquiries for this man G. M. Johnson and had been unable to find any trace of him.

Respondent produced Mr. Young as a witness and by him showed that he (Young) had visited Jackson county with the view of locating the residence of G. M. Johnson; had made two visits there; had inquired from all sources from which he thought he could get any information; asked county officers and ex-county officers; went to the tax list and examined it to see if he had been taxed and inquired from every person he saw who would have known if he had lived there. He testified to having found two George Johnsons, but they were both young men and they were no such men as the grantor in the Morrison deed, and that he had used every effort he could in other ways to hear of George M. Johnson.

Upon cross-examination, Mr. Young (who, we assume, is one of respondent's counsel) said that he had not made inquiries in Iron county; that he was unable to find there was any claim by Morrison that Johnson lived in Iron county; that he tried to take Morrison's deposition to find out where he claimed this person lived; that he did not ask Morrison but tried to take his deposition; that his effort to find out from Morrison was spent upon subpoenaing him to take his deposition; that when he was in Jackson county, Illinois, he met the George Johnsons referred to above; one of them lived on a mail route; and the other lived elsewhere in the country; did not know the population of Jackson county; supposed it was more than 5,000; had discussed the taking of Morrison's deposition at Cape Girardeau;

never gave notice to take deposition there; and, the witness added, "I knew he was inclined to dodge me."

Respondent next offered in evidence a duly acknowledged sheriff's deed, executed by the sheriff of Stoddard county on the 18th day of March, 1880, conveying the land in controversy, sale made on a judgment for taxes, recorded on the 5th day of July, 1880.

To the introduction of this deed appellants' counsel interposed an objection to the effect that it showed that the taxes were assessed against two lots together and the sale was so had; that under the statutes taxes must be assessed against each parcel of land separately and land must be so conveyed. Further, because it showed on its face it appeared to convey the title of "G. W. Johnson," when the title appeared in G. M. Johnson.

On this objection the court ruled thus: "Subject to objection."

The sheriff's deed, being introduced, showed by its narrations it was bottomed on a judgment rendered against "G. W. Johnson" for delinquent taxes upon "lots one and two, N. W. 1-4 Sec. 6, Twp. 28, R. 12," for the years of 1869 to 1876, inclusive, etc. That a special execution was issued in favor of the State of Missouri to the use of the county collector against the said "G. W. Johnson," etc., due advertisement made, etc.; that on the 5th day of March, 1880, sale was made, and that T. B. Turnbaugh was the highest and best bidder for the said real estate at the sum of $30.50 and the same was stricken off and sold to him.

Respondent next introduced the petition in the tax suit and the back taxbill. The petition was entitled, "State of Missouri, at the relation and to the use of William C. Harty, collector of the revenue of Stoddard county in the State of Missouri, v. George M. Johnson, defendant." It described the land as lots 1 and 2 of the northwest quarter of section 6, etc., as in the deed. It alleges that the tax was levied against lots 1 and 2 of the northwest quarter and shows it is otherwise in ap-

proved form.   The back taxbill referred to and filed with the petition shows the land described as aforesaid and gives the name of the owner as G. M. Johnson.

This proof was followed by an affidavit of non-residence made by the collector's attorney, which, among other things, states as follows: "That George M. Johnson, the defendant in the above-entitled cause, is a non-resident of this State."   No objection was made to the petition or the affidavit at the trial, but the affidavit is now assailed in appellants' brief as irregular.

The foregoing proof was supplemented by an order of publication, made by the clerk of the circuit court in vacation, in which defendant's name is given as George M. Johnson, and the land described as heretofore.   No objection was made to this order of publication and the same was followed by proof of publication showing that it was published in accordance with law.

At this stage, appellants interposed an objection to the effect "that the order of publication and deed show that there was no separation of the amounts due on each lot," etc.   Upon this objection the court ruled thus: "Subject to objection."

Following this, the judgment was introduced, and in it the name of defendant appears written as "G. W. Johnson" and the land is described as heretofore.   To the introduction of this judgment appellants' attorney objects as follows: "We make the same objection." No ruling whatever is shown thereon.

Respondent was sworn as a witness and testified, in chief, that he had been paying the taxes on the property since 1880, the date of his deed, and had paid two or three years' back taxes; that he did not know George M. Johnson; that he claimed to own the land as against the world.

On cross-examination, he said his possession was that he had sold some timber off the land, and referred his possession to the sheriff's sale and his payment of taxes.

Such is substantially respondent's case.

In briefs here it is claimed by appellants, in substance, that (1) the tax judgment, execution, sale and deed are void by reason of irregularity; (2) that under the record George M. Johnson was a citizen of the State of Missouri at the time of the tax suit and, hence, should have been proceeded against by summons and a return of *non est* before an order of publication could be made; (3) that the affidavit does not comply with section 1575; (4) that the court erred in admitting in evidence the tax deed, the petition and back taxbill, the affidavit of non-residence, the order of publication and the judgment for taxes; and (5) erred in not giving appellants' peremptory instruction.

Do any of these assignments point us to reversible error? We think not. Because:

I. There is some embarrassment in considering the rulings, *nisi*, in so far as they relate merely to the admissibility of evidence as such; for such rulings, if rulings they be, are vague in legal intendment and shorn of all precision. To say in response to objections lodged, as the learned trial judge does, "Proceed," or to say, as he also does, "Subject to objection," may mean sundry things. For instance, "proceed" might mean go on, stop objecting, or that the objection is frivolous, or I don't choose to consider it at this time, if at all. "Subject to objection" might mean, in a literal sense, that the evidence is subject to, i. e., controlled by, the objection, or that it was admitted temporarily and the objection held in the breast of the court, *sub judice*, to be afterwards disposed of during the trial, or it might mean that the court noted the objection and considered it unnecessary, or declined, to rule on it.

To leave a ruling in such form that the intendment of the court below must be only guessed on appeal, or to leave it so that it may be delivered of different or contradictory meanings at the whim of erudite and versatile counsel, is to leave it in affliction as human affairs

come and go. For instance, witness the impassioned insistence of Serjeant Buzfuz, *ore tenus,* in the *cause celebre* of Bardell v. Pickwick, before Stareleigh, J., at Guildhall, wherein he, Buzfuz, as the reported case shows, construed Samuel Pickwick's homely message to Mrs. Bardell, viz.: "Garraways, twelve o'clock. Dear Mrs. B.—Chops and tomato sauce. Yours, Pickwick," and another, viz.: "Dear Mrs. B.—I shall be home to-morrow. Slow coach. Don't trouble yourself about the warming pan" (we may be allowed to quote from memory), as ardent and inflammatory love-letters, or as trifling with the tender sensibilities of widow Bardell. It is needless to say that if the Bardell case had been appealed here, on the same facts, we would have inclined to the holding that Buzfuz's construction of Mr. Pickwick's oracular and somewhat incoherent language, whether considered in the light of the maxim *contra proferentem,* or in *mitiori sensu,* was far-fetched and quite missed (by overshooting) the mark.

Nevertheless, coming back to our case, as all the evidence is before us, our duty is to consider the decree from the standpoint of whether or not it is right and founded on the competent proof, regardless of questions relating to mere admissibility of evidence. [Rice v. Shipley, 159 Mo. l. c. 405.] For in an equity case, such as we consider this, it is not necessary here to pass on rulings, *nisi,* on the admission or rejection of evidence. [Sheridan v. Nation, *ibid,* 27.] But this does not mean that the chancellor should not rule on evidence when its admission is challenged, nor does it mean that if the case required it, we would not reverse and remand because of reversible error in allowing proof.

II. The affidavit of non-residence is assailed. The theory of appellants' counsel seems to be that, before an order of publication should have issued in the tax suit, a preliminary investigation should have been had and the question decided whether or not the defendant was

a resident or a non-resident, and that if an erroneous conclusion was arrived at on this preliminary matter, then the order of publication was ineffective—that to determine such question in this case a summons should have been issued, a *non est* return made and, predicated upon such return, an order of publication might be issued by the court (R. S. 1899, sec. 577). But to avoid the force of this contention, it may be said that, in establishing a working theory or rule for the administration of the statutes relating to service of process, it has been held that an affidavit of non-residence is one of the conditions precedent for an order of publication by the clerk. [See authorities *infra*.]

Our present statute was practically the statute then existing. As it then stood it provided (R. S. 1879, sec. 3494) that "in suits . . . for the enforcement of . . . . liens against . . . real . . . . property, and in all actions, at law or in equity, which have for their immediate object the enforcement or establishment of any lawful right, claim or demand to or against any real . . . property within the jurisdiction of the court, if the plaintiff, or other person for him, shall allege in his petition, or file an affidavit, stating that part or all of the defendants are non-residents of the State . . . the court in which said suit is brought, or in vacation, the clerk thereof, shall make an order," etc.

The affidavit filed in this case was in strict compliance with the law and its vigor as a basis for jurisdiction in a proceeding *in rem* is sustained by many cases —for example, Allen v. Ray, 96 Mo. 542; Tooker v. Leake, 146 Mo. 419; Coombs v. Crabtree, 105 Mo. 295.

In the case at bar, we need not consider the proposition whether the order of publication operated to bring a resident defendant into court, because the facts of this record do not sustain appellants' contention that Johnson was a resident of the State of Missouri at that time. The most that can be said of the proof is that many years before, from 1866 to 1870, he floated into Cape

Girardeau and Stoddard counties, sporadically and by way of parenthesis, for two, three or four times, and claimed to live in Iron county. Whether he then resided in and was a citizen of Iron county is left a somewhat open question and, therefore, there is no room for the presumption that he continued to reside there. Before a status is presumed to continue the existence of the status itself must be first established.

The contention in hand must, therefore, be ruled against appellants.

III. The order of publication and the proof thereof, as well as the petition, are all in proper form, against the right party, and, barring from present consideration all question in regard to the assessment and levy of the tax against lots 1 and 2, northwest quarter, instead of against each lot separately, they are not subject to just criticism.

IV. It is next contended that for taxation purposes and for the purposes of sale under special execution issued on a tax judgment, the tax appropriate to each should have been levied against each of lots 1 and 2 of the northwest quarter, so that each lot would bear its own tax, and that the sale should have been made accordingly, and that in this case the order of publication, the judgment, the sale and the deed all show that the tax was levied against the lots together, and the whole northwest quarter, both lots, sold for the aggregate tax. The tract of land aimed at was evidently the northwest quarter, *in solido,* and the preceding words, "lots 1 and 2," indicating its division into lots, may be treated as somewhat descriptive only. But, waiving that, we are not called upon to decide whether the proceedings in this respect were regular, because the matter is disposed of by the settled doctrine that such irregularity, if any, does not render the proceedings void; that it, at best, renders them voidable, and might have been considered on appeal or writ of error, in the principal case, but is not the subject of collateral attack, such as that deliv-

ered here.  The precise question has been up before, and has been uniformly determined against appellants' insistence.  [Wellshear v. Kelly, 69 Mo. 343; Gray v. Bowles, 74 Mo. 419; Brown v. Walker, 85 Mo. 262; Jones v. Driskill, 94 Mo. 190; Coombs v. Crabtree, 105 Mo. l. c. 298.]  See, also, on the general doctrine that tax proceedings are not to be overthrown on mere irregularities when assailed collaterally, Schmidt v. Niemeyer, 100 Mo. 207; Boyd v. Ellis, 107 Mo. 394; Gibbs v. Southern, 116 Mo. 204; Warren v. Manwarring, 173 Mo. l. c. 32-3, and cases cited.

In Lovitt v. Russell, 138 Mo. l. c. 482, a general proposition applicable to the point being considered, is formulated thus:  "No principle of law is more universally accepted in this country than that the judgment of a court of competent jurisdiction, so long as it stands unreversed, cannot be impeached in a collateral proceeding on account of mere errors or irregularities not going to the *jurisdiction*."

The assignment of error under discussion, for the foregoing reasons, is ruled against appellants.

V.  It is next contended that the tax judgment and deed are void and ineffective and do not operate upon the title of George M. Johnson because the judgment is against G. W. Johnson and the tax deed recites such judgment and adopts the error.  It will be seen that the petition has the proper defendant by name, George M. Johnson, the order of publication has the proper defendant by name, the proof of publication has the proper defendant and the order of publication was actually published against the proper defendant by name, but that, presumably by the misprision of the clerk, the middle initial "M" was pretermitted in the judgment and "W" inserted in lieu thereof.   Does this render the judgment void under the foregoing facts?   We think not.   This judgment could have been corrected by a *nunc pro tunc* entry on the data existing in the clerk's office. [Stevenson v. Black, 168 Mo. l. c. 561; R. S. 1899,

sec. 660.] And equity considers that done which should have been done.

Not only so, but by the Statute of Jeofails, existing at the time this suit was brought, and now appearing in Revised Statutes 1899, as section 672, it was and is provided that no "judgment after trial or submission," no "judgment upon confession, *nihil dicit* or upon failure to answer," should "be reversed, impaired or in any way affected by reason of . . any mistake in the name of any party or person . . . when the correct name . . . shall have been once rightly alleged in the pleadings or proceedings." If, therefore, the tax judgment had been appealed from, this court, even in such direct proceeding, could not have stayed, reversed or impaired it by reason of the misprision of the clerk in changing the true name once appearing in the records, George M. Johnson, to G. W. Johnson.

We are cited to cases holding that a tax judgment is void where it is based upon an order of publication not directed to the true owner of the land by his record name, but directed to a person whose Christian name appears therein by initials only. Samples of this line of cases are: Gillingham v. Brown, 187 Mo. 181; Spore v. Ozark Land Co., 186 Mo. 656; Vincent v. Means, 184 Mo. 327; Turner v. Gregory, 151 Mo. 100; Elting v. Gould, 96 Mo. 535. But all those cases on investigation will be shown to be based on the principle that constructive service must be viewed critically in order to prevent, so far as can be, irreparable injury, and that a publication against a defendant by the initials of his Christian name was not precise enough for constructive service, giving jurisdiction, and did not come within the purview of the statute requiring such suit to be brought in the name of the owner. [See R. S. 1879, sec. 6837, now appearing as R. S. 1899, sec. 9303.] The matter lying at the root of those cases and in judgment was *jurisdiction* and due process of law, and it was held, in effect, that by that character of publication jurisdiction

was not acquired.  But the case at bar is not within the *rationale* of those cases, for here. the  defendant was brought into court by a proper order of publication directed to him by his true name.

Furthermore, the judgment in question was concededly rendered in a cause wherein George M. Johnson was the record defendant, the execution is shown to have issued in that identical cause and the sale and deed followed.  If under these circumstances the grantee in the Morrison deed had been an innocent purchaser, one with no knowledge of this tax title or these defects, a different question might arise, but appellant, James M. Morrison, who made the purchase on behalf of himself and his wife, knew the whole history of the title to this land from his search of the records, and, as a matter of deliberate and cool judgment, determined to defeat or avoid the tax proceedings on the theory that they were void, and thereby placed himself in a position not entitled to broad judicial sympathy.  When an error of the character under consideration shows a lack of jurisdiction, the result is one thing; but where jurisdiction has been fairly acquired, then errors of such character are mere irregularities not going to the root of the matter and, as said, not amenable to collateral attack.  [Lovitt v. Russell, 138 Mo. supra; Rorer on Judicial Sales (2 Ed.), sec. 171.]

Moreover, in the law, under the doctrine of Missouri courts, the middle initial is not considered important in identifying the person.  [21 Am. and Eng. Ency. of Law (2 Ed.), p. 307; Lucas v. Current River Land & Cattle Co., 186 Mo. 448.]

Respondent has been paying taxes on this land for practically twenty-five years and thereby passed under the yoke of good citizenship as the claimant of the land. It is true he may not be in condition to invoke Revised Statutes 1899, section 4268, against appellants whereby their failure and the failure of  their grantor to pay taxes for thirty years, in certain contingencies,

would have been a bar to their claim. But, notwithstanding this is so, yet the acquiescence shown here in the tax judgment, sale and deed for so long a period of time is not entirely without significance. The law rewards the diligent and appellants stand in Johnson's shoes, pressing a stale claim.

We think it fairly results from the foregoing that we should not hold the tax judgment and deed, under which respondent claims title, void, and we accordingly disallow, the assignment of error under consideration.

VI. From what has been said it would seem unnecessary to consider the question presented by respondent wherein it is denied by him, and contended by appellants, that the George M. Johnson, grantor in appellants' deed, is the identical Geo. M. Johnson, patentee of the land in controversy.

It is proper to say, however, that the evidence indicates that appellant, James M. Morrison, had an eye on this land since 1884, knew of respondent's claim, his deed and his payment of taxes, and relying on his own faulty conclusion to the effect that the tax proceedings were void, contemplated, possibly as early as said year, the acquisition of George M. Johnson's title, hoping, peradventure, thereby to cut away the title of respondent. Fortunately (or unfortunately) for him, in 1897 a man claiming to be George M. Johnson came out of the fog, unpenetrable it seems, and wherein he was lost for many lustrums, remained in sight long enough to make a deed and straightway disappeared into the same fog again—"a mysterious stranger" indeed. Under the evidence before us the issue of identity became one of fact for the court. [Flournoy v. Warden, 17 Mo. 435.] And we see no reason why we should not defer to the finding of the lower court on that issue as on the others.

If, however, George M. Johnson lost his title by the tax proceeding, as we hold, then the issue as to whether or not the grantor in appellants' deed was the true former owner or was an imposter masquerading as

such, is an immaterial one, since if he lost his title under the tax proceeding, a subsequent deed from him would convey nothing.

The judgment is affirmed.

All concur, except *Brace, P. J.,* absent.