BLONDINA JONES PICKERING BY, ETC., RESPONDENT, v. W. E. HARTSOCK, DEFENDANT, THE MEDICAL PROTECTIVE CO., GARNISHEE, APPELLANT.*

Kansas City Court of Appeals. November 8, 1926.

870

*Corpus Juris-Cyc References: Appeal and Error, 4CJ, p. 648, n. 32; Fraudulent Conveyances, 27CJ, p. 421, n. 27; p. 462, n. 49; p. 835, n. 64; Garnishment, 28CJ, p. 145, n. 68; p. 147, n. 94; p. 148, n. 5; p. 166, n. 94, 97; p. 242, n. 28; p. 308, n. 28; Indemnity 31CJ, p. 438, n. 77; p. 439, n. 79; Insurance, 32CJ, p. 1152, n. 94; Liability Insurance, 36CJ, p. 1062, n. 4; p. 1097, n. 67.

*F. P. Stapleton, Dubois & Miller* and *McCaffrey & Cook* for respondents.

*James P. Murphy* and *Brown, Douglas & Brown* for appellant.

BLAND, J.—This is a garnishment proceeding growing out of a judgment against the defendant Hartsock, a physician of Albany, Missouri, who was sued by plaintiff for malpractice. The judgment was in the sum of $5000 and defendant appealed. He was given ten days after the term in which the judgment was rendered to file an appeal bond but the appeal was never perfected. He carried a liability policy with the garnishee who employed a local attorney to defend the suit and perfect the appeal. After the ten days for filing the appeal bond had elapsed, plaintiff's attorney inquired of the local attorney on several occasions whether the garnishee intended to file an appeal bond in the case for defendant. Plaintiff's attorney told garnishee's local attorney that if the appeal bond was not filed they desired to have an execution issued. The attorney for plaintiff was assured that such an appeal bond would be filed. Finally the local attorney stated that he would take the matter up with the garnishee company as to when the bond was to be filed. Thereafter the garnishee sent its attorney to Albany to look after the matter. Garnishee's attorney stated to plaintiff's attorney that he had made an investigation and found that defendant Hartsock was insolvent and no recovery could be had against him by plaintiff, and suggested settlement of the case; he first offered to pay $1500 and then $2000 to settle the case, stating that unless settlement was made the garnishee would file an appeal bond and that there was such error in the case that it would be reversed in the Court of Appeals. The offer of set-

tlement was refused and the attorney left with the understanding that he was going home. No appeal bond was filed so execution was issued against Hartsock, resulting in a return of *nulla bona.*

Not being able to settle with plaintiff, the garnishee immediately entered into negotiations with the defendant for a release by him of its obligation under its contract of insurance, resulting in one of their attorneys calling defendant to Kansas City and there securing from him his signature to a contract prepared in advance at the company's office at Ft. Wayne, Indiana. This contract is dated the day of the execution upon the judgment. Said contract purported to release the garnishee from its obligation under the insurance policy in consideration of which the garnishee paid the defendant the sum of $3500 in the form of a check, also prepared in advance at Ft. Wayne, except as to the amount. The garnishee arranged with a Kansas City bank that the check, which was drawn on an Indiana bank, might be cashed by the defendant. While garnishee's attorney testified that this was a "settlement" with the defendant, the contract does not purport to be a settlement as it does not recite any dispute or contention between the parties but merely contains a recital of the judgment against the defendant; that an appeal had been taken from the judgment; that another action against the defendant was pending by one Della Hill Bell, which the evidence shows was another malpractice case; that the parties desired to terminate the policy and the cancellation of all liability of the garnishee either to the insured or to the plaintiff in said suits or any other persons who might make claim, and that in consideration of the sum of $3500 paid to defendant, the parties agreed that the policy be "cancelled, annulled and declared to be void and of no effect" and that the company be released from all liability thereunder.

The garnishment proceeding involved herein arose out of the execution on the judgment, resulting in the garnishee being summoned. The garnishee in its answer to the interrogatories set up the release executed by the defendant and the reply to the garnishee's answer attacked said release as fraudulent. The issues were tried by the court sitting as a jury, resulting in judgment against the garnishee in the sum of $5000 with interest or in the total sum of $5512.50. Garnishee has appealed.

The policy of insurance provides that The Medical Protective Company agreed—

"TO DEFEND AND INDEMNIFY Waldo E. Hartsock, D. O., of Albany, State of Missouri, against any claim or suit as hereinafter specified, based on professional services rendered or which should have been rendered during the term of this contract or any renewal hereof as follows:

"A. Against any claim or suit for damages for malpractice, error or mistake, at any time filed, based on professional services rendered or which should have been rendered by the holder thereof, a partner, assistant, nurse, agent or any other person;" also any claim or suit, for damages growing out of autopsies, dispensing of drugs or arising in suits brought by the defendant in collection of professional fees. It further provided that upon notice from the defendant the company would assume full responsibility for the defense of any claim or suit, employ local counsel who in conjunction with the legal department of the company "shall defend" and that the defense should be maintained to final judgment in favor of the defendant or until all remedies by appeal, etc. should have been exhausted. The policy further provided that—

"The Company shall INDEMNIFY the holder hereof against any judgment or loss imposed by law upon the holder hereof in any claim or suit defended by the Company. Such indemnity shall be limited to five thousand ($5000) dollars in any one claim or suit, and fifteen thousand ($15,000) dollars in all claims and suits arising hereunder, or any renewal hereof, such indemnity being in addition to the unlimited defense, above provided; and

"That such defense and indemnity shall extend to and cover the estate of the holder hereof; upon the following conditions;"

The conditions then set forth are that defendant as soon as possible should notify the company at its office of any threatened claim or suit and furnish full information relating to the services rendered and in the event of claim or suit being filed, as soon after as possible the defendant should forward to the garnishee the petition and process and all other papers relating to the claim or suit.

At the request of plaintiff the court made, among others, the following findings:

"No. 1.

"The court finds that the policy in evidence was a contract of indemnity but that upon the judgment becoming final, there arose a liability on the part of said garnishee to the defendant Hartsock to pay said judgment, which said liability at that time was subject to the garnishment of plaintiff herein.

"No. 2.

"The court under the evidence finds that the settlement alleged by the garnishee to have been made with the defendant was fraudulent and was made for the purpose and with the intent of defeating plaintiff in the collection of her judgment herein, and by reason of which fraud on the part of the garnishee said alleged settlement is void as to this plaintiff and plaintiff's rights herein against the garnishee are not concluded by said alleged settlement."

The court in deciding the case stated, in part, as follows:

". . . Now, I am inclined to think that under the language of that policy, it contemplated the protection of Dr. Hartsock only; I don't think there was any such privity of contract as would permit a person injured by the negligence of Dr. Hartsock, to sue the company or afford them any chance of recovery from it primarily, but there is a little different situation obtained in this case. The company, by its contract, undertakes to take charge of the defense of any suit that is brought against Dr. Hartsock, and the record of this case shows that it did that in this case. They employed lawyers that appeared in the various courts where the matter came up and conducted the defense of the case as far as it went. . . . The record developed that Dr. Hartsock either voluntarily went to Kansas City or was summoned there by the agents or at least someone in charge of the affairs of the Medical Protective Company. They met there in Kansas City, and they effected a settlement with Dr. Hartsock, who during the course of the trial had been shown to be a man that was actually insolvent, but at this meeting at Kansas City, which was rather clandestine and stealthy in its surroundings, they having met there at a hotel, they agreed to pay Dr. Hartsock, although as yet he had sustained no loss, the sum of $3500, and he accepted that proposition of this agent of the company, and I believe an arrangement was made there at the bank by the agent of the company for him to be permitted to cash the draft without identification, or, at least, they brought about a condition that he had no difficulty whatever, though perhaps unacquainted, in collecting the $3500 which he had accepted in complete settlement with the company for any liability they might have with respect to the trial." . . . "Now, under that contract of indemnity, in my judgment, at the time the $3500 was paid, the company wasn't then even responsible to Dr. Hartsock, because, as I recall the policy on final judgment or loss sustained by him, they became liable to him."

The trial court used some language in deciding the case that indicates that he was under the impression that the policy insured against loss by reason of liability, but the construction of the contract is a matter of law concerning which we will form our own conclusions.

It seems to be admitted by plaintiff that if the policy of insurance in this case is one indemnifying defendant against loss and is not one indemnifying him against liability, plaintiff is not entitled to recover against the garnishee for the reason that if the insurance was not against liability, there was never any liability on the part of the garnishee to the defendant to pay the judgment which at any time was subject to garnishment by plaintiff. There is quite a difference between the effect of a policy which insures directly against liability and one that insures against loss or damages by reason of liability. Under

policies of the latter kind the amount of the insurance does not become available until the insured has paid the loss. [Realty Co. v. Insurance Co., 179 Mo. App. 123, 139.] And it is now settled in most jurisdictions, including this State, that policies containing general language in reference to indemnity for liability, such as is contained in the policy in the case at bar, are so ambiguous in their terms that they will be declared as insuring against liability in the absence of what is called a "no action" clause, or the like, which clause usually provides—

". . . 'no action shall lie against the company as respects any loss under this policy, unless it shall be brought by the assured himself to reimburse him for loss actually sustained and paid by him in satisfaction of a judgment after a trial of the issue.' " [Schambs v. Fidelity & C. Co., 6 A. L. R. 1231, 1232.] [Realty Co. v. Ins. Co., supra.]

"Where the indemnity is against liability the cause of action is complete and the indemnitee may recover upon the contract as soon as his liability has become fixed and established, even though he has sustained no actual loss or damage at the time he seeks to recover. Thus, under such a contract, a cause of action accrues to the indemnitee upon the recovery of a judgment against him, and he may recover from the indemnitor without proof of payment of the judgment." [31 C. J. 438, 439.]

We have examined the cases cited by garnishee and find some of them supporting its contention that this policy insured against loss by reason of liability but these cases are not in harmony with the law in this State.

However it is unnecessary for us to go to the extent of holding that the policy in the case at bar provides for insurance against liability generally as distinguished from a policy of indemnity against loss as a result of liability, for the reason that the policy in terms purports to indemnify the insured against a judgment.

"A covenant of indemnity against the recovery of a judgment in a particular matter is broken by the recovery of such a judgment against the indemnities and he thereupon has a right of action against the indemnitor. A cause of action for damages on such covenant measured by the amount of the judgment is then complete, although the judgment has not been paid by the indemnitee. A judgment by default against the indemnitee, or a judgment by consent, may be sufficient to warrant a recovery under the indemnity contract, unless the terms and conditions of the contract are such that a breach will not occur until there has been a trial on the merits. But it has been held that an indemnitee who has suffered judgment to go against him, either through ignorance, carelessness or design, cannot visit the loss on his indemnitor." [31 C. J. 439.]

The garnishee does not attempt to dispute the law laid down by Corpus Juris in connection with this matter but states that the contract in the case at bar "insured against loss by reason of any judgment which might be obtained but did not insure against the recovery of a judgment." "There is a vast difference . . . between a contract insuring against the recovery of a judgment and a contract indemnifying or insuring against loss or damage by reason of a judgment having been obtained." The wording of the policy, to say the least, is just as much susceptible to the construction that it insured against the recovery of a judgment as that it insured against loss or damage by reason of a judgment having been obtained or, in other words, against loss by reason of the payment of the judgment. It is well settled that in construing insurance policies they must be construed most strongly against the insurer. We think there is no question but that the garnishee became indebted to the defendant when the judgment became final and that the company was thereupon subject to garnishment by plaintiff.

However, it is insisted by the garnishee that the statute against fraudulent conveyances does not apply to a case where one who is indebted to the judgment debtor pays the indebtedness to him and that the garnishee in this case had a perfect right to settle with the defendant and that plaintiff now has no greater rights against the garnishee than defendant would have. This may be accepted as a true statement of law under ordinary conditions and where the statute relating to fraudulent conveyances is not involved.

"A fraudulent transfer may take the form of a release or cancellation of a debt or claim without consideration or with intent to hinder, delay, or defraud creditors, where choses in action are subject to the claims of creditors. Insolvent debtors cannot release or surrender without consideration the rights of existing creditors any more than they can give away their property." [27 C. J. 462.] [See, also, Anderson v. Met. Stock Exchange, 77 N. E. 706, 707 (Mass.); Youngs v. Trustees of Public Schools, 31 N. J. Equity 290; Everett v. Read, 3 N. H. 55; Arthur v. Morrow, L. R. A. 1918A, page 400 (Mo.).]

The record shows that defendant herein was insolvent at the time the release was signed by him, in fact, that he was insolvent from the very beginning of this litigation; that the garnishee knew that he was insolvent when the release was procured from him; that garnishee's attorney who procured the release testified that he did not care at the time it was executed whether the defendant was or was not insolvent. Under such circumstances there is no question but that plaintiff in this garnishment proceeding was entitled to recover at least the sum of $1500, the difference between the amount it actually paid defendant and the amount it owed to him. [Hall v. Alabama Terminal & Im-

provement Co., 2 L. R. A. (N. S.) 130, 137 (Ala.) ; Harms v. Fidelity & Casualty Co., 172 Mo. App. 241, 249; Rieger v. London Guar. & Acc. Co., 202 Mo. App. 184, 210.]   And this is true even if there had been no actual intent upon the part of the garnishee to perpetrate a fraud (Arthur v. Morrow, supra, l. c. 404), but there was evidence from which the court could find an actual intention to defraud in the so-called settlement by the parties to it.   It was not made where one would expect it to be made in the usual course of business, that is, at the home of the defendant and the place of the litigation, but the garnishee secretly had the defendant come to Kansas City and there paid him the sum of $3500 after it had been unable to make settlement with plaintiff, and assisted him in procuring the cashing of the draft so that he might get the money in cash, and thus be enabled to defeat his creditors by having his assets in such a convenient form.   It knew that defendant was insolvent, that he had no means to pay the judgment and for his accommodation arranged that he could obtain the consideration for the release in cash so that it could not be reached by the plaintiff.   While there is no direct evidence that there was anything said between the parties, at the time the so-called settlement was made, to the effect that the money should not be used by the defendant for the purpose of discharging his obligation to plaintiff, the facts and circumstances were such as to give rise to the inference that the garnishee was assisting defendant in this secret transfer of his cause of action against the garnishee so as to defraud the plaintiff and was a party to such a transaction if not the instigator of the same.

We need not pass upon what would be the effect of a bona-fide settlement and release of the cause of action that defendant had against the garnishee upon the policy at the time the so-called settlement was made for the reason that the contract assuming to release the garnishee does not purport to be grounded upon any contention or difference existing between the parties as to liability or as to the amount thereof, but merely shows that garnishee was willing to pay $3500 to be released from its obligations on the policy.   The garnishee says that there is evidence that the "settlement" was made because some friction had arisen between the parties to it, but even so, there is no evidence that there was any dispute between the parties either as to liability or the amount hereof.   It was not a settlement as ordinarily understood, but merely a voluntary release of the cause of action upon the payment of money, or the release of a fully liquidated amount with nothing in dispute upon the payment of a lesser sum than that due.   It was not a bona-fide settlement of a disputed demand but merely a fraud on the part of the garnishee who sought to be released of a $5000 obligation upon the payment of $3500.   This it paid to the defendant because it was unable to settle by the payment of

$2000 to plaintiff. The transactions shown in this record smack of sharp practice on the part of the garnishee and taken as a whole show fraud strongly appealing to the courts for adjustment. [See Bain v. Atkins, 63 N. E. 414 (Mass.).]

However, notwithstanding our belief that a moral wrong has been committed against plaintiff we cannot grant her the relief she desires without some authority in law for our action. The statute against fraudulent conveyances governs in this case and not what this court may think about the moral questions involved. It has been held that one owing plaintiff's debtor may pay his debt to such debtor at any time as it is his legal obligation to do, and this he may do even in order to defeat garnishment and even in aid of the debtor in placing the amount of the debt beyond the reach of the latter's creditors. [Fletcher v. Pillsbury, 35 Vt. 16; Wood v. Bodwell, 12 Pick 268 (Mass.); Provident Nat'l Bank v. Cairo Flour Co., 226 S. W. 499; Chicago, etc., Railroad v. Blagden, 33 Ill. App. 254; 28 C. J., pp. 147, 148.]

It is not disclosed how much of the recited consideration of $3500 contained in the release was apportioned to the Bell case. The burden was upon plaintiff to show the amount of garnishee's indebtedness to defendant so the best we can do is to assume that the $3500 was paid on account of plaintiff's judgment. The garnishee before garnishment proceedings discharged its debt to defendant to the extent of $3500 but from what we have said owed defendant $1500 which was subject to garnishment. If plaintiff will within ten days remit $3500 from the judgment as of its date, it will be affirmed, otherwise the judgment will be reversed and the cause remanded.

*Guy B. Parks*, Special Judge, concurs; *Arnold, J.*, dissents for the reason that he believes the judgment should be affirmed for the full amount.