HOMER HOMAN and HOMER HOMAN, Assignee, Appellants, v. EM-
PLOYERS REINSURANCE CORPORATION, a Corporation.—136 S. W.
(2d) 289.

Division One, January 23, 1940.

*O. H. Swearingen* and *Robert L. Holder* for appellant.

*Cowgill & Popham* and *Guy W. Green, Jr.,* for respondent.

*Paul R. Stinson, amicus curiae.*

DALTON, C.—This is an action in equity against a reinsurance company. Plaintiff the holder of two unsatisfied judgments for personal injuries against an insolvent bus company which was insured by an insolvent insurer seeks to collect the balance due on said judgments from the reinsurer of the bus company's insurer. According to appellant this proceeding is an equitable garnishment by which "plaintiff seeks to apply insurance money to a judgment

654

debtor under the provisions of Sections 5898 and 5899, Revised Statutes 1929'' (Mo. Stat. Ann., secs. 5898, 5899, pp. 4499, 4500). The trial court sustained a demurrer to plaintiff's amended petition. Plaintiff declined to plead further and judgment was entered dismissing plaintiff's petition and taxing costs against him. The plaintiff has duly appealed.

The petition alleges that defendant is an insurance company, formerly known as the Employers Indemnity Corporation (hereinafter referred to as Corporation), and engaged in the general insurance business in this State; that plaintiff and his wife were passengers on a bus of the Capital Stage Lines Company, when a collision occurred due to the company's negligence, and plaintiff and his wife were injured; that judgments against the bus company and a railroad company for a total of $67,500 were obtained ($32,500 for plaintiff and $35,000 for plaintiff's wife); that plaintiff's wife has assigned her judgment to plaintiff; that there is due and owing on the said judgments the sum of $3500 as principal and $21,195 as interest; that Capital Stage Lines Company carried a policy of liability insurance (in full force and effect on the date of the accident) insuring it against loss by reason of adverse judgments arising by virtue of its negligence in the operation of any of its buses, including the one in which plaintiff and his wife were riding; that the policy was issued by the Continental Auto Insurance Underwriters of Springfield, Illinois (hereinafter referred to as Continental); that the insured complied with all of the terms of said policy; that said policy was attached to and made a part of the petition; that the Continental, the insurer of the Capital Stage Lines Company (hereinafter referred to as Stage Lines) had a blanket reinsurance agreement with defendant (in full force and effect on the date of the accident) by which defendant agreed to indemnify said Continental ''and all parties insured by it and expressly the Capital Stage Lines Company for all amounts in excess of $5000 to one person and for all amounts in excess of $10,000 accruing from one accident;'' that the agreement, attached to and made a part of the petition, re-embodied all of the terms of the policy issued by the Continental to the Stage Lines, and that the Continental had complied with the terms and conditions of said reinsurance agreement.

The petition further alleged that the particular bus of the Stage Lines involved in the accident had a capacity of more than twenty-four passengers and the total liability of the Continental and of the defendant corporation under the policy and agreement was $50,000 for one accident or collision; that the Continental had gone into receivership in 1931; that the Receiver had been discharged in 1934 and its debts and liabilities had been ''dissolved and for naught held;'' that its creditors took nothing; that since plaintiff's judgments

were not final at said date, the plaintiff could make no claims and was now precluded from relief in the receivership; that plaintiff had collected $64,000 from the other judgment debtor; that defendant corporation had paid some claims for the Continental under its reinsurance agreement but had not discharged its full liability; and that defendant corporation in the trial of said causes against the Stage Lines had employed counsel and taken charge of and managed the defense on behalf of Stage Lines in each of said causes. Plaintiff prayed for issuance of equitable garnishment and for general relief.

The parties by stipulation have filed copies of the policy and agreement, as attached to and made a part of the petition, and have agreed that said exhibits be incorporated in the abstract of the record. In their briefs appellant and respondent have pointed out and discussed at length various provisions of the policy and agreement, as if both exhibits were before us for all purposes involving their application and construction. Respondents have also set out the said exhibits in full in an appendix to their brief and further state, "The facts must, therefore, be taken solely from the allegations of the petition and attached exhibits." No evidence however was taken in the court below, and the cause was ruled on demurrer to the petition.

In the case of Highland Investment Co. v. Kansas City Computing Scales Co., 277 Mo. 365, 374, 209 S. W. 895, 897, this court said, "It has always been held that an instrument filed with a pleading as an exhibit is not to be considered in determining the sufficiency of the pleading. . . . And that is true even though the petition allege expressly . . . that the exhibit is made a part thereof. But it will be noticed that in all such cases the exhibit is to be ignored only in determining the sufficiency of the pleading as such. 'An exhibit attached to the petition is not so far a part of the petition itself as to save the petition from, being bad on demurrer. . . .' The exhibit may be considered not as a substantive allegation of fact, but in aid and explanation of the fact formally lodged in the body of the pleading. It may not supply allegations to set out a cause of action, but may aid the petition and make certain what would otherwise be uncertain." This holding was approved in the case of State ex rel. Igoe v. Joynt, 341 Mo. 788, 793, 110 S. W. (2d) 737, 739.

In view of the position taken by the parties and in keeping of the rule above announced we set out the pertinent provisions of the policy and reinsurance agreement, the two exhibits attached to the petition.

The policy was issued September 17, 1928 by the Continental to the Stage Lines, and among other things, it provides that the Continental "Does hereby agree to insure and indemnify" Stage Lines ". . . against actual loss from legal liability arising or resulting from claims upon the insured by reason of the ownership,

maintenance or use of the automobile described . . .; if such claims are made on account of: (A) Bodily injuries . . . suffered, by any person or persons, . . . as the result of an accident occurring while this policy is in force . . . (B) Damage to or destruction of property . . . In addition to the foregoing the Underwriters does hereby agree (a) to defend, in the name and on behalf of the assured, any suit . . . brought against the assured to recover damages, on account of such accidents as are provided for by terms of this policy . . .; and (b) that the indemnity against loss from legal liability covered by this policy . . . shall cover all court costs taxed against the assured in any such legal proceeding, and also interest accruing on the judgment, which costs and interest, including the judgment rendered therein, if any, do not exceed the maximum indemnity provided in this policy. . . . The company hereby waives a description of the motor vehicles to be insured hereunder and agrees to pay any final judgment for personal injury . . . caused by any and all motor vehicles operated by the assured pursuant to the certificate of public convenience and necessity issued by the Public Service Commission of Missouri, within the limits set out in the schedule shown herein, and further agrees upon its failure to pay any such judgment, such judgment creditor may maintain an action in any court of competent jurisdiction to compel such payment. . . .

"Liability and property damage limits: . . . vehicles over 24 passenger capacity, not less or more than $5000 per person and $50,000 total liability . . ."

The reinsurance agreement between defendant and Continental provided that the Corporation "does hereby reinsure and agree to indemnify Continental . . . for all loss in excess of Five Thousand ($5,000.00) Dollars for injury to or death of one person, and in excess of Ten Thousand ($10,000.00) Dollars for injury to or death of more than one person in any one accident or event, *where such loss accrues to the Reinsured* under its . . . Automobile Public Liability Policy, issued to take effect on or after 12:01 A. M. on the 1st day of August, 1926, and prior to any termination of this Agreement, to cover liability of the policyholder in amounts exceeding the amounts above set forth; It being agreed that 'loss' shall mean only those amounts actually paid to claimants in settlement of claims including interest upon judgments.

"*This reinsurance is excess* and not pro rata or contributing reinsurance, *and applies only to the liability of the REINSURED in excess of the amounts first herein named,* which amounts are retained at the risk of the REINSURED as a first liability, *before loss shall accrue to the CORPORATION hereunder.*

"This reinsurance is subject to the following conditions: . . .

"2. *FORMS.* The REINSURED shall file with the CORPORA-

TION a specimen copy of each policy-form and endorsement-form used by the REINSURED to cover owner's liability on automobiles; and thereupon *each reinsurance hereunder shall be subject to all of the general and special terms and conditions of such policies or endorsements.*

"3. *REINSURANCE PREMIUMS.* The REINSURED shall pay to the CORPORATION as premium for this reinsurance, 55% of the excess premium charged by the REINSURED for all limits in excess of $5000/10,000 reinsured hereunder. . . .

". . . Credit will be allowed for unearned reinsurance premiums on account of cancellation . . .

"The CORPORATION shall have the right *to participate jointly with the REINSURED in investigation, adjustment and settlement of claims* upon which, in the judgment of the officers of the CORPORATION, it is, or might become interested or exposed, and the REINSURED agrees to cooperate with the CORPORATION to the end that settlement may be made in each case where legal liability apparently exists, with a minimum of expense to the CORPORATION. . . .

"*The CORPORATION will make prompt settlement of its losses hereunder as soon as the same are definitely and finally determined.*

"7. *PERIOD OF LIABILITY. Liability of the CORPORATION upon each risk shall commence simultaneously with that of the REINSURED,* provided cessions are reported to the CORPORATION as hereinbefore provided, *and shall continue concurrently with the liability of the REINSURED* and cease when the liability of the REINSURED terminates under the respective policy. . . .

". . . It is understood and agreed that the business of the REINSURED in which the CORPORATION has a reinsurance interest hereunder, is the sole and absolute property of the REINSURED, and the CORPORATION agrees not to use any information so acquired for any purpose other than that contemplated herein.
. . .

"*EFFECTIVE DATE AND TERMINATION.* This agreement shall become effective as of 12:01 A. M. on the 1st day of August, 1926, and shall continue in effect until cancelled by mutual consent or by either party hereto, by service upon the other party of thirty days' notice in writing, stating upon what future date cancellation shall become effective. The CORPORATION shall participate in all the business of the REINSURED coming within the scope of this agreement during said thirty day period, . . .

"The CORPORATION expressly reserves *the right to terminate its reinsurance upon any specific risk previously accepted,* upon twenty days' notice to the REINSURED, where the records or information or experience upon such risk show the same to be unsatisfactory or the hazard disproportionately great. . . .

"Any termination of this agreement shall, however, be subject to the *liability of the CORPORATION upon any claims accrued* during the effective period hereof." (Italics ours.)

Appellant contends that the petition states a cause of action (1) because under Section 5898, "the reinsurance company's liability becomes absolute whenever a loss occurs on account of a casualty covered by such insurance and the payment of the loss does not depend upon the satisfaction by the assured of a final judgment against him for such loss," and (2) because, Section 5899, "gives the judgment creditor the right to proceed in equity against the insurance company to reach and apply the insurance money to the satisfaction of the judgment."

Respondent insists that the demurrer was properly sustained because the petition fails to state a cause of action against the reinsurer: (1) Because the contract was one of indemnity against loss rather than one of insurance and no liability on the part of the defendant accrued until the primary insurer actually paid the loss. (2) Because there is no privity of contract between the plaintiff and the defendant and therefore plaintiff has no right of action on the reinsurance contract as against defendant. (3) Because the petition fails to allege a loss as described in and covered by the contract so as to give rise to a liability under the reinsurance agreement. (4) Because said sections of the statutes do not apply and give no rights of action to plaintiff under the facts here.

From the allegations of the petition, we must assume that the policy of insurance was a Missouri contract and respondent concedes that we must assume that the reinsurance agreement is a Missouri contract and is governed by the laws of this State. Sections 5898 and 5899, Revised Statutes 1929 (Laws of Mo. 1925, p. 274, secs. 1 and 2), (Mo. Stat. Ann., 5898, 5899, pp. 4499, 4500) were in force and effect when the policy was written, and they became and were a part of said policy of insurance as much as if fully set out therein and nullified any contrary provisions of the policy. [Head v. Insurance Co., 241 Mo. 403, 413, 147 S. W. 827, 830; McKinney v. Fidelity Mutual Liability Ins. Co., 270 Mo. 305, 193 S. W. (2d) 564, 567; Yeats v. Dodson, 345 Mo. 196, 127 S. W. (2d) 652; Smith v. Equitable Life Assurance Society (Mo. App.), 107 S. W. (2d) 191, 193.]

It is unnecessary to set out said provisions of the statute herein. They regulate the payment under contracts of casualty insurance occasioned by loss on account of bodily injury or death or damage to property and provide a remedy. These sections were considered by this court in the case of Schott v. Continental Insurance Underwriters, 326 Mo. 92, 102, 31 S. W. (2d) 7, 12, and this court said: "An analysis of the act discloses that it regulates the payment in three particulars: (1) It prescribes the time when the payment shall be made, (2) the person to whom it shall be made, and (3)

the manner in which it may be enforced. With respect to the first it accelerates the payment: The insurer may not defer payment until after a judgment against the insured has been paid by the latter in money; the obligation on the part of the insurer to pay accrues the moment judgment against the insured has been rendered. As to the second, the act provides that upon the recovery of a final judgment against the insured, the insurance money shall be applied to the satisfaction of such judgment, and such application may not be prevented by the insolvency or discharge in bankruptcy of the insured nor by the cancellation of the policy or a settlement between the insurer and the insured. The third regulation merely prescribed the method by which the two preceding ones may be given effect. 'Regulation of the payment' is the single objective of the act; if it effects the changes in contracts of casualty insurance claimed by appellant, then such changes are merely incident to and grow out of the provisions regulating the payment. . . .

" 'The second section establishes a temporary lien in favor of one, who has put the damages, resulting to him from the casualty insured against, in the form of a judgment, on the amount due under the policy as between the insured and the insurer. It also affords him the usual remedies of a judgment creditor.' . . . No discussion is required to demonstrate that the Legislature may establish appropriate forms of relief for existing rights or those rightly created, and that it may provide equitable procedure for the enforcement or protection of such rights.' [Lorando v. Gethro, supra.]'' [228 Mass. 181, 117 N. E. 185, 188, 1 A. L. R. 1374.]

In view of the allegations of the petition it is apparent that the liability of the Continental to plaintff has been definitely fixed and determined under the policy and under said statutes. The application of these statutes to the first policy of insurance, and as between plaintiff and the said Continental must be conceded. The question arises as to whether or not the said statutes apply to the reinsurance agreement, and as to whether or not plaintiff may maintain this action, or has any rights as against defendant under the facts stated in the petition.

In view of the conclusions we have reached, in this case it is unnecessary for us to pass upon the proposition as to whether or not Sections 5898 and 5899, Revised Statutes 1929 (Mo. Stat. Ann., secs. 5898, 5899, pp. 4499, 4500) apply directly to the particular contract of reinsurance under consideration. The sole question presented is whether or not the demurrer was properly ruled. If the amended petition stated a cause of action, regardless of the direct application of said statutes to the reinsurance contract, then a ruling on that question is not required.

Respondent contends that the contract is strictly one of reinsurance; that it is a contract of indemnity and solely between

Continental and the defendant; that plaintiff has no rights as against defendant; and that even Continental could not recover without having paid the loss. Our attention is called to the closing sentence of the first paragraph of the contract, as follows: "It being agreed that 'loss' shall mean only those amounts actually paid to claimants . . ."

The general rule is "that an insured may not bring an action at law against a reinsurer of the risk under a strict contract of re-insurance because there is no privity of contract between them. . . . Such reinsurance, in the ordinary case, is taken out for the benefit of the reinsured in order to indemnify it from loss, and it has become a settled principle that upon the insolvency of the insurer, the proceeds of the reinsurance are assets to be distributed generally amongst its creditors and the insured has no special equitable claim against them." [United States to Use of Colonial Brick Corp. v. Federal Surety Co., 72 Fed. (2d) 964, 967.] (Citing cases from many jurisdictions.)

"The general rule is that, even after a loss under the original policy, the person originally insured has no equitable lien or preferable claim upon the proceeds of the reinsurance." [Morrow v. Burlington Basket Co. (Ct. of Civil Apps. of Texas), 66 S. W. (2d) 746, 749, citing authorities.]

The Missouri courts recognize the above general rules. [Strong v. Phoenix Insurance Co., 62 Mo. 289, 296; Thomas v. Land, 225 Mo. App. 216, 220, 30 S. W. (2d) 1035, 1037; Gantt v. The American Central Insurance Co., 68 Mo. 503, 533.]

"The contract of reinsurance is totally distinct from, and unconnected with, the primitive insurance; the original assured having no kind of claim against the reinsurer, and the reassured remains solely liable on the original insurance, and alone has a claim against the reinsurer. Therefore, where the original insurer becomes bankrupt, and the assured only gets a small dividend out of his estate, the reinsurer is still liable to pay the whole amount of the reinsurance to the assignees of the original insurer, without deducting the dividend; and the original assured has no claim upon them in respect of the money so paid. . . . It thence follows, that there is no privity between the original assured and the reinsurer, and that the liability over the reinsurer is exclusive and solely to the reinsured." [Strong v. Phoenix Ins. Co., supra.]

Ordinarily a reinsurance contract, unless it contains provisions to the contrary, is purely a contract indemnifying against loss and no action will lie until the loss has been paid. [Vera Democrazia Society v. Bankers Life Ins. Corp. (N. J.), 160 Atl. 767; Clark County v. Bergstresser, 57 S. D. 424, 233 N. W. 276; American Bonding Co. v. American Surety Co., 127 Va. 209, 103 S. E. 599;

Union Central Life Ins. Co. v. Lowe, 349 Ill. 424, 182 N. E. 611; Baltica Ins. Co. v. Carr, 330 Ill. 608, 162 N. E. 178.]

The agreement between defendant and Continental, however, is not strictly a reinsurance contract. We must consider it as written and determine its legal effect under proper rules for construction.

The courts of this State, of course, recognize the "difference between contracts of indemnity against loss and contracts of indemnity against liability. In the former the insurance company does not become liable until loss has actually been suffered and the amount of the insurance does not become available until the assured has paid the loss, whereas in the latter case the obligation of the insurance company becomes fixed when liability attached to the insured." [Klotzbach v. Bull Dog Auto Fire Ins. Assn. (Mo. App.), 267 S. W. 39, 40.]

However, "Where a contract is so expressed as to place on the indemnitor, whose promise is to indemnify against loss, the additional obligation of performing some act in regard to the subject matter of the indemnity for the benefit of the indemnitee, on his neglect to perform the act, an immediate right of action will accrue to the indemnitee whether or not he has sustained any actual damage." [Klotzbach v. Bull Dog Auto Fire Ins. Assn., supra.] In such case, as for example an agreement to pay any judgment rendered, will give an immediate cause of action in case of failure of performance, and without the judgment being paid by the insured.

Where a policy of insurance contains such general language in reference to indemnity or liability as to be ambiguous and uncertain the policy will be declared as insuring against liability in the absence of what is called "no action," or similar clauses, such as one requiring that action be brought by the insured himself for loss actually sustained and paid by him in satisfaction of a judgment against him. [Pickering v. Hartsock, 221 Mo. App. 868, 874, 287 S. W. 819, 822; Wehrhahn v. Ft. Dearborn Casualty Underwriters, 221 Mo. App. 230, 239, 1 S. W. (2d) 242, 246.] It has been noted that the contract under consideration contains no such clauses. In determining whether the contract is one of indemnity against loss, or indemnity against liability, we may further take into consideration the provisions of the contracts under which defendants took over the defense of the original causes against Stage Lines. The petition alleges facts as to defendant's construction of the policy in that defendant is said to have taken charge of and managed the defense of both damage suits on behalf of the Stage Lines. [See Wehrhahn v. Ft. Dearborn Casualty Underwriters, supra.]

We will review the particular terms and provisions of the so-called reinsurance contract, insofar as they may make allegations of the petition certain which are uncertain. For example the word "indemnify" is used in the petition without stating whether it means

indemnify against loss or liability, and the word "loss" is used without a statement as to whether or not it means "amounts actually paid" or "liability from accrued indebtedness."

For a valuable consideration agreed to be paid, to-wit, 55 per cent of the excess premium charged by the Continental for all limits in excess of $5000/10,000, the defendant corporation did (1) reinsure and (2) agree to indemnify Continental for all loss in excess of the limits prescribed. Loss was agreed to be "those amounts actually paid to claimants . . ." However, the word "loss" was later used as clearly meaning liability, as for example: ". . . Where *loss accrues* to the insured. . . ." ". . . before loss shall *accrue* to the corporation . . ." and, "The corporation will make *prompt settlement of its losses* . . . as soon as . . . determined." The reinsurance was defined as excess and not pro rata or contributing reinsurance. The reinsurance applied only to the *liability* of the Continental *in excess of the amounts named.* The Continental retained, "*as first liability*" the amounts indicated "before *loss shall accrue to* the Corporation." The Corporation agreed to make prompt settlement of *its losses* as soon as the same were definitely and finally determined. The petition alleged that the Continental had complied with the terms of the agreement and we must assume that all premiums were paid and that the policy forms and endorsement forms were filed. Each reinsurance, therefore, including the reinsurance of the policy issued by Continental to Stage Lines, was "subject to all the general and special terms and conditions" of the said policy issued to Stage Lines. It was agreed that "*liability* of the Corporation upon each risk" should "commence simultaneously with that of the reinsured" and should "*continue concurrently with the liability of the reinsured.*" By reason of the statutes, heretofore referred to, and the term of the policy, the agreement of Continental under its policy with Stage Lines was to indemnify against *liability* and not merely against "loss" or amounts actually paid on judgments or claims. In addition Continental had expressly agreed to pay any judgments rendered against Stage Lines, within the terms of the policy. The Corporation had a definite interest in the policy issued by Continental to the Stage Lines, but the agreement provided: "It is understood and agreed *that the business of the reinsured in* which the Corporation has a *reinsurance interest* hereunder" was the sole and absolute property of the reinsured and that the information obtained would not be used for other purposes than intended by the parties. The Corporation reserved the right to terminate its reinsurance *of any specific risk* after certain notice and also provided that the Corporation should "*participate in all business of the reinsured coming within the scope of*" the agreement for a period of 30 days after notice of intention to cancel. The Corporation had the right to "*participate jointly* with the reinsured *in in-*

*vestigation, adjustment* and *settlement* of claims," and according to the petition (as we have seen) it employed attorneys and took charge of and managed the defense of each case on behalf of the Stage Lines. (All italics ours.)

We must keep in mind the allegations of the petition to the effect that defendant agreed to indemnify Continental and all parties insured by it and especially the Stage Lines for all amounts in excess of the amounts indicated and that said agreement re-embodied all the terms of the policy issued by the Continental. An agreement to indemnify Stage Lines, however, in view of the facts alleged and the above statutes would have to be indemnity against liability and not loss. A consideration of the policy and the reinsurance agreement leads us to the conclusion that plaintiff has properly pleaded the legal effect of said policy and contract. Although the words "against liability" are not expressly used.

In the policy issued by the Continental to the Stage Lines, the Continental expressly agreed, not only to pay any final judgment for personal injuries caused by any of the said vehicles operated by the Stage Lines, but further agreed that upon failure to pay any such judgment, such judgment creditor could maintain an action in any court of competent jurisdiction to compel such payment. In addition and by reason of the statutes which became and were a part of said policy, such obligation of Continental was absolute.

The reinsurance contract, made prior to the contract for primary insurance, provided that each reinsurance thereunder should be "*subject to*" all of the general and special terms and conditions of the policies and endorsements reinsured thereunder and that the liability upon each risk should commence simultaneously with that of the Continental and "*continue concurrently with the liability* of the reinsured" (Continental), and that the reinsurance provided for was excess and *applied to the liability* of the *Continental in excess of the amounts named*. The words "subject to" must be construed in their natural, plain and ordinary signification. The words "subject to" are defined by lexicographers as meaning "liable," and the word "liable" is defined as "bound or obligated in law or equity; responsible; answerable.' [Webster's New International Dictionary (Second Edition); 60 C. J. 673; Hannibal Trust Co. v. Elzea, 315 Mo. 485, 286 S. W. 371, 377.] "Subject to" is also defined as "controlled by." [See Morrison v. Turnbaugh, 192 Mo. 427, 441, 91 S. W. 152, 155; City of Westport v. Kansas City, 103 Mo. 141, 148, 15 S. W. 68, 69; Gratz v. Railroad, 165 Mo. 211, 219, 65 S. W. 223, 225.] The particular clause of the contract provided, (in the event reinsured complied with its terms, and in view of the allegations of performance we must assume that it did) that "each reinsurance hereunder shall be subject to all the general and special terms and conditions of such policy and endorsements." We think this clause

should be construed in a reasonable and common sense manner with a view to the necessary intention of the parties at the time the contract was made. It meant, of course, only such terms and conditions as were reasonably applicable to such a contract of reinsurance between the parties and such terms and conditions, therefore, as the parties may be presumed to have had in mind when the contract was made. [Haws v. Fire Assn. of Philadelphia, 114 Pa. 431, 7 Atl. 159, 160; Whipple v. North British & Mercantile Ins. Co., 11 R. I. 139, 140.] The original policy issued by Continental to Stage Lines, as we have seen, expressly provided for the payment of any final judgment for a personal injury caused by any of the motor vehicles operated by Stage Lines, within the limits set forth, and further provided that upon failure to pay any such final judgment, such judgment creditor could maintain an action in any court of competent jurisdiction to compel such payment. We think that it was reasonably within the contemplation of the parties that such provisions of the policy become a part of the reinsurance contract and the reinsurer became bound thereby for the excess. It was for the benefit of Continental and for its insured that such judgments, for which it was liable, be covered by such contract. The reinsurance of the excess was in effect upon the same terms and conditions. If the reinsurance contract was not to be subject to the provisions set out in the primary insurance contract, to-wit, that any judgment against Stage Lines be paid the contract could have been made definite and certain. It was a matter particularly appropriate to the subject matter of the reinsurance contract, and in view of the particular terms of the reinsurance contract, we may presume that the parties had such result in view when the contract of reinsurance was made. In this connection we may assume that defendant's alleged defense of the suits against Stage Lines was by reason of the provision of the policy about defense of suits, to which provision the said reinsurance agreement was subject under its terms.

Defendant in its insistance that the reinsurance contract is one of indemnity against loss (where no liability accrues until the primary insurer has paid the loss) cites and relies on the case of Fidelity & Deposit Co. of Md. v. Pink, 58 Sup. Ct. 162, 302 U. S. 224, 82 L. Ed. 213. In that case the contract provided that "the reinsurer does hereby reinsure . . . against loss. . . . The reinsurer's proportionate share of the loss . . . shall be paid to the reinsured upon proof of the payment of such items by the reinsured, and upon the delivery to the reinsurer of copies of all essential documents concerned with such loss . . . and the payment thereof." Respondent also cites the case of State ex rel. Western Automobile Ins. Co. v. Trimble, 297 Mo. 659, 249 S. W. 902. In that case the by-laws referred to in the contract provided that: "Each member . . . will be indemnified for any sums paid by such members in satisfaction

of any judgment imposed by law upon such member . . . in no event does liability accrue against this association in favor of a member until payment or payments within the terms of his membership have actually been made by said member.'' In each of these cases the contracts were held to be contracts of indemnity, however, the contract under consideration here is very different in its terms, as we have seen.

Respondent also relies upon the case of Greenman v. General Reinsurance Corp., 237 App. Div. 648, 262 N. Y. Supp. 569, affirmed without opinion, 262 N. Y. 701, 188 N. E. 128.

We quote from that opinion: ''The plaintiff, having suffered serious injuries in an automobile accident, had judgment against the owner who was insured against liability in the New Jersey Fidelity & Plate Glass Insurance Company. The owner being insolvent, plaintiff brought an action against the insurer under the provisions of Section 109 of the Insurance Law and judgment was rendered against it. That company became insolvent and went into liquidation in New Jersey without paying the judgment.

''Prior to the issuance of the liability policy and before the accident, General Reinsurance Corporation had entered into a contract with the New Jersey Company to reinsure its risks over and above certain specified amounts, which the latter retained as its risk. It was not the usual reinsurance policy, for, instead of reinsuring risks already insured, it was an agreement to insure future risks. . . .

''The plaintiff contends that, although he is not a party to the reinsurance contract, he is beneficially interested therein, and is entitled to recover that portion of the loss reinsured. . . . he says that under the terms of the contract the intent was that the defendant should become liable directly to those suffering loss. . . .''

The court then held: ''There is nothing in the contract when fairly read and rationally construed to indicate a purpose of co-insurance. . . . The cases in which an insured may recover from a reinsurer are those where the language of the policy itself indicates the intent to become directly liable. . . . It would be a strained construction of the language of this contract to find a direct obligation to the insured. It is a contract of indemnity with the New Jersey Company in what appears to be the ordinary terms reinsurance.''

The opinion recognizes the reinsurer may be liable where the language of the contract indicates such an intention.

Respondent also cites: Sophia Bros. v. General Reinsurance Co., 274 N. Y. Supp. 565, 153 Misc. 6; Bethke v. Cosmopolitan Life Ins. Co., 262 Ill. App. 586; Commercial Casualty Ins. Co. v. Columbia Casualty Co. (Ct. of Apps. Tenn.), 125 S. W. (2d) 493; People's Metalware Company v. General Ins. Co., 282 N. Y. Supp. 993; Insurance Co. of Pennsylvania v. Park & Pollard Company, 180 N. Y.

Supp. 143, and numerous other cases from many jurisdictions but none deal with a contract like the one under consideration here. [See also, Gutride v. General Reinsurance Corp., 167 Misc. 608, 4 N. Y. Supp. (2d) 387; Globe National Fire Ins. Co. v. American Bonding & Casualty Co., 198 Iowa, 1072, 195 N. W. 728, 200 N. W. 735, Id., 217 N. W. 268.] In the last case the insurer obtained reinsurance pursuant to agreement with the original insured, and recovery by the primary insured was allowed in equity.

After a careful consideration of all of the provisions of the contract of reinsurance, and after a consideration of the authorities cited, we have reached the conclusion that the contract is not a mere contract of indemnity against loss but is, in fact, a contract of indemnity against liability. [Allemannia Fire Ins. Co. v. Fireman's Ins. Co., 209 U. S. 326, 28 Sup. Ct. 544, 52 L. Ed. 815; Pickering v. Hartsock, supra; Wehrhahn v. Ft. Dearborn Casualty Underwriters, supra.] Under all of the terms of the contract the definition of "loss" as "amounts actually paid to claimants" is not controlling, so as to make the contract strictly one of indemnity against loss, or to prevent a recovery by plaintiff herein.

Defendant, according to the allegations of the petition, has not discharged its full liability under the reinsurance agreement, and the judgments against Stage Lines, to the extent alleged, remain due and unpaid. The reinsurance agreement provides that the reinsurance applies to the liability of Continental in excess of the amounts named and that each reinsurance under the contract shall be subject to all of the general and special terms and conditions of the policy of insurance. The reinsurance of Continental's liability was of the excess above the amounts indicated and within the maximum limits set by said contract. When the judgments were rendered against Stage Lines and remained unpaid a cause of action against Continental accrued to Stage Lines under the policy, and to plaintiff under the statutes. A cause of action, under the terms of the reinsurance agreement, also accrued to plaintiff against defendant. The amount of Stage Lines' liability to plaintiff had been determined in proceedings to which defendant was a privy, because, according to the petition, defendant took charge of and managed the defense of the cases against Stage Lines. [Strong v. Phoenix Insurance Co., 62 Mo. 289, 295, 299.] The measure of Stage Lines liability to plaintiff was also the measure of Continental's liability to plaintiff. The measure of the liability of defendant to plaintiff in this cause must be measured by the terms of the agreement entered into between the defendant and Continental providing for the payment of the judgments against Stage Lines in excess of the amounts fixed and within the limits prescribed. The measure of liability of defendant to plaintiff, under the facts alleged, remains and is the same whether Continental remains solvent or insolvent. The petition alleges that some

claims arising out of the collision in which plaintiff and his wife were injured have been settled but that defendant has not discharged its full liability under its contract. If defendant has discharged its full liability that would be a matter of defense. The petition alleges facts from which it appears that the statutory and contract liability of Continental for the application of the insurance to plaintiff's judgments has not been reduced to judgment and cannot now be reduced to judgment. But defendant's liability to plaintiff depends on whether or not Continental would have been liable to him. The circumstances, however, do not prevent the ascertainment of Continental's liability in this proceeding in equity in order to determine the extent of defendant's liability to plaintiff under the terms of the reinsurance agreement. Plaintiff has exhausted his remedies against Continental. No judgment can be obtained against it nor can it be made a party to this proceeding. [Yeats v. Dodson, 345 Mo. 196, 127 S. W. (2d) 652, 656.]

Since defendant has not discharged its full obligation under the said reinsurance agreement to the extent of the excess and within the limits fixed by the terms of the reinsurance agreement, and has not paid the judgments to plaintiff, and has not paid said sum to Continental, its receiver or assigns, for plaintiff's benefit or otherwise discharged its liability, and since the amount of liability as between plaintiff and Stage Lines has been determined in a proceeding in which defendant participated, and Continental's liability to plaintiff under the policy and statutes can be determined upon the basis of said judgments to which defendant was a privy, and can be determined in this proceeding, we are of the opinion that the plaintiff in this proceeding is entitled to have the liability of defendant, to the extent of said liability as provided for under the terms of said agreement, and with reference to the facts stated in the petition, subjected to the payment of plaintiff's judgment. [See Grbavach v. Casualty Co., 40 Cal. App. 376, 180 Pac. 835, 836; Bruckner-Mitchell v. Sun Indemnity Co., 82 Fed. (2d) 434, 442.]

The petition, therefore, states a cause of action against defendant. The trial court erred in sustaining the demurrer and dismissing the petition, the judgment is, therefore, reversed and the cause remanded with directions to reinstate the cause and overrule the demurrers. It is so ordered. *Hyde* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.

## ON MOTION FOR REHEARING.

DALTON, C.—Respondent contends that we have overlooked the fact that the present action was "brought exclusively under and by

virtue of Sections 5898 and 5899, Revised Statutes Mo. 1929, and such statutes must be held to apply to reinsurance contracts to permit the present action," particularly since plaintiff in the prayer of his petition requests "the court to cause to be issued and equitable garnishment directed to defendant in accordance with" the above sections of the statute.

In the opinion we have outlined the facts pleaded in the petition and stated the particular theory upon which relief was sought. In addition to the prayer for special relief the petition closed with a prayer for general relief as follows: "And for such other and further orders as to the court may seem mete and just, the premises considered."

Plaintiff was only required to make "a plain and concise statement of the facts constituting a cause of action," and to make "a demand of the relief to which the plaintiff may suppose himself entitled." [Sec. 764, R. S. 1929 (Mo. Stat. Ann., 764, p. 983); Liese v. Meyer, 143 Mo. 547, 555, 45 S. W. 282.] The prayer was no part of the petition and could be disregarded in determining what relief, if any, is authorized by the petition [Caldwell v. Eubanks, 326 Mo. 185, 30 S. W. (2d) 976, 980.] Under a prayer for general relief the court may grant any relief consistent with the pleadings and evidence. [Muenks v. Bunch, 90 Mo. 500, 507, 3 S. W. 63.] We are here dealing with a demurrer to the petition, and "whether plaintiff was entitled to all or any of the relief prayed does not matter, provided he was entitled to some relief on the facts stated." [Barnett v. Ground, 304 Mo. 593, 263 S. W. 836, 840.] Since, as we have seen, the petition stated facts sufficient to constitute a cause of action requiring relief in equity, the demurrer should be overruled.

Respondent contends that we have twisted the contract away from its normal and ordinary meaning and have given it a strained and unnatural construction. It contends that we have in fact transposed various portions of the contract and confused "the insuring clause" with other terms of the contract which are said to be "conditions." Respondent says that it was unnecessary to define the word "loss" in every instance in which it was used, and insists that we have placed "undue emphasis" upon certain portions of the contract. We do not think the opinion is properly subject to this criticism.

In the opinion we held that the contract was not strictly a reinsurance contract. It was made before the contract of primary insurance was made. It is not a contract for indemnity against loss. It provided for the filing of all policies of primary insurance and agreed that thereupon each reinsurance should be subject to the general and special terms of such policies. It contains many additional provisions not appearing in the usual reinsurance contract referred to in reported cases, as for example, where it provides; "This reinsurance is excess  .  .  .  and applies only to the *liability of*

*the reinsured* in excess of the amounts first herein stated, which amounts are retained at the risk of the reinsured as a first liability, *before loss shall accrue to the corporation* hereunder.'' No case dealing with a reinsurance contract having such a provision in that portion of the contract, which precedes the ''conditions,'' has been called to our attention. The clause in question precedes the statement in the contract that this reinsurance is subject to the following ''conditions.''

Under ''conditions'' the contract provides for the filing of each policy form and endorsements and provides that ''each reinsurance hereunder shall be subject to all general and special terms and conditions of such policies or endorsements.'' It was agreed that ''the corporation will make prompt settlement of its losses hereunder as soon as the same are definitely and finally determined.'' Respondent concedes that there is no standard form of excess reinsurance agreements. In the case of Bruckner-Mitchell, Inc., v. Sun Indemnity Co. et al., 82 Fed. (2d) 434, 444, the court said: ''It is true that typical reinsurance agreements do not operate in favor of the original insured. They are merely contracts of indemnity of the insurer and there is no privity between the original insured and the reinsurer. But nothing in the law forbids drafting reinsurance agreements in special terms so that they will operate in favor of the original insured.'' In that case the reinsurers of a contractor's bond given for the benefit of the District of Columbia and certain materialmen were held liable in a suit in equity by materialmen, although the reinsurance agreement did not mention the materialmen, but only the District of Columbia. The court said: ''We think the first reinsurance agreements in the instant case were not typical agreements but were special, and we conclude that according to the terms thereof the reinsurers are liable to materialmen.'' As to who may enforce the liability of a reinsurer see extensive notes 35 A. L. R. 1348, and 103 A. L. R. 1485.

Respondent insists ''the court places undue emphasis on that part of the contract stating that 'liability of the corporation upon each risk' shall 'continue simultaneously with that of the reinsured' and should 'continue concurrently with the liability of the reinsured.' '' We believe that we have construed the contract as a whole and have arrived at its true intent and purpose from the terms used in the contract.

Respondent insists that the ''subject to'' clause merely fixes the liability of the reinsurer to the reinsured and gives no rights to third parties. The authorities cited by respondents, however, deal only with reinsurance contracts which are pure contracts of indemnity and which clearly do not undertake to make any provisions for the benefit of third parties. We have held in effect the provisions and conditions in the primary insurance policy which could have no

application as between the reinsured and the reinsurer and which were not intended to have any force or application as between the reinsured and the reinsurer would not apply to the reinsurance contract. The opinion does not hold that the "subject to" clause adopts into the reinsurance agreement all of the terms and conditions of the original policy, but only those provisions particularly applicable to the relationship between the parties to the reinsurance contract and which, under the terms of that contract, were intended to be a part thereof.

Respondent contends that "the opinion subjects the defendant to double liability since Continental's assigns and plaintiff both have a cause of action under it." The reinsurance agreement, in so far as it provides for the payment of any judgment against Stage Lines, is, of course, an agreement for the benefit, not only of plaintiff, but also of Stage Lines and Continental, although primarily for the benefit of plaintiff, the ultimate and primary beneficiary. But defendant's liability under the reinsurance agreement will be discharged, so far as it relates to the facts set forth in the petition, upon the application of said funds, representing the liability of defendant under the terms of said agreement, to the payment of plaintiff's judgments. If Continental collected under its cause of action for the failure of defendant to pay said judgments and discharge its liability thereon the recovery would have been for the benefit of plaintiff (in this connection see Equitable Surety Co. v. United States, 234 U. S. 448, 456, 34 Sup. Ct. 803, 805, 58 L. Ed. 1394).

Respondent contends that the reasoning of the opinion breaks down when we consider that Continental was put in liquidation under an order of court and that a receiver was appointed and thereafter discharged. We think not, particularly in view of the fact that plaintiff was the ultimate beneficiary under the agreement for the payment of judgments rendered against Stage Lines and for which judgments both Continental and defendant are liable. This court may in this proceeding determine the liability as between plaintiff and defendant under the terms of the reinsurance agreement which was executed by the defendant and Continental, even though Continental be in receivership.

A brief has been filed on behalf of *amicus curiae*. It is contended that the contract under consideration is a typical reinsurance contract providing only for indemnity against loss; that "not a line within the four corners of the agreement either expresses or implies any other intent;" that the various words and phrases of the contract do not "support the conclusion of an intent to insure against liability;" and that the reinsurance agreement is exactly parallel to the terms of the reinsurance agreement under consideration in the case of Stickel v. Excess Insurance Co., 136 Ohio St. 49, decided November 22, 1939, by a divided court. We think the contract

under consideration there is easily distinguishable from the one here. The court followed the case of Fidelity and Deposit Co. v. Pink, as the most applicable case and thereafter said "it would seem superfluous to cite additional authorities for, after all, the decisions turn largely upon the language of the particular contract under examination in the particular case."

It is further insisted that the words, "subject to" as used in the reinsurance agreement imply no assumption of obligation or liability. Cases are cited to the effect that when a grantee takes title to land by deed reciting that the conveyance is "subject to" certain incumbrances, that the deed imposes no personal obligation or liability. [McFarland v. Melson, 323 Mo. 977, 984, 20 S. W. (2d) 63; 66; State Insurance Co. v. Irwin, 67 Mo. App. 90, 94; Walker v. Goodsill, 54 Mo. App. 631, 634.] It is said: "The words 'subject to,' used in their ordinary sense, mean, 'subordinate to,' 'subservient to,' or 'limited by.' There is nothing in the use of the words 'subject to,' in their ordinary use, which would even hint at the creation of affirmative rights." [Englestein v. Mintz, 345 Ill. 48, 177 N. E. 746, 752.] However, this contention overlooks the fact that we are construing a contract of reinsurance which "applies to the liability of the reinsured" and that such a contract necessarily implies the assumption of personal obligation and liability by the reinsurer, the extent of which is to be determined in the usual and ordinary manner by the consideration of the instrument itself and the words used therein and the references made. The reinsurance contract creates the obligation and not the words "subject to." Other contentions made in the brief are sufficiently covered in the original opinion or above.

The motion for rehearing is overruled. *Hyde* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.