843 F.2d 201
 61 A.F.T.R.2d 88-1143, 88-1 USTC P 9307
 COLONIAL AMERICAN LIFE INSURANCE COMPANY, Petitioner-Appellee,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant.
 No. 87-4492.
 United States Court of Appeals,
Fifth Circuit.
 April 26, 1988.
Rehearing Denied May 25, 1988.
 
 Nancy G. Morgan, Michael C. Durney, Acting Asst. Atty. Gen., Tax Div., Michael L. Paup, Chief, Gary R. Allen, William S. Rose, Jr., Acting Asst. Atty. Gen., Appellate Section, Dept. of Justice, William F. Nelson, Chief Counsel, I.R.S., Washington, D.C., for respondent-appellant.
 Thomas G. Nash, Jr., Dallas, Tex., for petitioner-appellee.
 Jack H. Blaine, Wm. T. Gibb, Carolyn P. Chiechi, Margaret Milner Richardson, Washington, D.C., for amicus curiae (ACLI).
 W. Roy Woodall, Jr., Washington, D.C., for amicus curiae (NALC).
 Appeal from the Decision of the United States Tax Court.
 Before GARZA, REAVLEY and DAVIS, Circuit Judges.
 GARZA, Circuit Judge.
 
 
 1
 * Colonial American Life Insurance Company is a life insurance company that sells life, accident and health insurance. This action was brought by Colonial after the Commissioner of Internal Revenue disallowed Colonial's deductions of "ceding commissions" incurred in 1975 and 1976.[1] The Tax Court rejected the Commissioner's disallowance of Colonial's deductions, holding that amounts paid by a reinsuring company (Colonial) to an initial insurer (Transport) under a contract for indemnity reinsurance may be deducted in the year incurred and not amortized over the anticipated useful life of the policies. We are reversing the Tax Court.
 
 
 2
 Before considering the narrow tax question involved in this case, it is necessary to first understand the nature of an indemnity reinsurance contract and its relationship to other forms of reinsurance transactions. Reinsurance is an arrangement whereby an insurance company transfers some or all of the risks it has underwritten to another insurance company.[2] The company purchasing the reinsurance is known as the initial insurer, the reinsured, or the ceding company; the company acquiring the risk is known as the reinsurer or the reinsuring company.
 
 
 3
 There are basically two types of reinsurance--assumption reinsurance and indemnity reinsurance. In assumption reinsurance, the reinsuring company takes over for the initial insurer and becomes directly liable to the policyholders. The initial insurer is relieved of all liability, including the maintenance of the required reserves. The reinsuring company has the duty of establishing and maintaining the required reserves. In addition, the reinsuring company is entitled to all premiums paid and must pay all future claims and expenses with respect to the policies.
 
 
 4
 With respect to indemnity reinsurance, two variations are relevant here: conventional coinsurance and modified coinsurance. In an indemnity reinsurance contract the initial insurer and the reinsuring company share the benefits and obligations arising out of the reinsured policy or contract. Furthermore, the initial insurer will transfer to the reinsuring company all or part of its liability on the policies being reinsured. The initial insurer remains directly liable to the policyholders and continues to collect premiums and to pay claims and expenses. The reinsuring company will then reimburse the initial insurer for the claims and expenses attributable to the risks it has reinsured.
 
 
 5
 Conventional and modified coinsurance significantly differ in their effect on the reserves of the insurance companies involved. Essentially, reserves are liability accounts representing the present value of the company's net liabilities under the policies in force. Life insurance companies are required to maintain reserves in an amount equal to the excess of the present value of future benefits payable under the policies over the present value of future net premiums. Such liability must be backed by cash or other assets of the insurance company. In a conventional transaction, the initial insurer reduces its reserves by the amount attributable to the ceded liability. The reinsuring company will then establish reserves to cover that liability acquired. In a modified coinsurance transaction the initial insurer maintains the required reserves and merely collects and pays over to the reinsurer the investment income derived from the assets supporting the reserves.
 
 
 6
 In conventional and modified coinsurance two exchanges take place: (1) the initial insurer pays the reinsuring company full consideration for the reserve liability assumed, and (2) the reinsuring company pays the initial insurer a "ceding commission" or an "initial allowance" for the business acquired. Insurance companies typically net these transactions, with only the excess amount changing hands. Thus, the reinsuring company has income equal to the reserve liability actually assumed even though such liability exceeds the consideration actually received. This appeal centers primarily over the proper characterization of ceding commissions for the purposes of the Internal Revenue Code. In this case, the ceding company, Transport entered into both conventional and modified coinsurance agreements with the reinsuring company, Colonial.
 
 
 7
 Under the conventional agreement, Colonial agreed to reinsure three percent of Transport's liabilities on a block of whole life insurance policies in return for a three percent of future premium income from those policies. The agreement called for an initial consideration (ceding commission) in the amount of $60,000 payable to Transport for the right to receive the future income generated by the reinsured policies, and for an additional consideration (reinsurance premium) in the amount of $675,762[3] payable by Transport to Colonial for assuming a share of Transport's reserve liability with respect to the reinsured policies.
 
 
 8
 Under the modified agreement, Colonial reinsured an additional 31 percent share of the same block of life insurance policies, and agreed to pay Transport an additional ceding commission of $620,000 as consideration for the right to a proportionate share of Transport's future income of the policies. Unlike the conventional agreement, the modified agreement did not call for an initial reinsurance premium to cover a proportionate share of the reserves on the reinsured policies since no portion of those reserves was shifted to Colonial under this agreement. After netting the amounts payable to each party, $4,238 (without interest) was paid by Colonial to Transport on December 29, 1985. Colonial also paid a finder's fee of $13,600.
 
 
 9
 On July 1, 1976, a second pair of conventional and modified coinsurance agreements were made with Transport by Colonial as reinsurer. The conventional agreement covered an additional 3.6 percent share of the block of policies. It provided for a ceding commission of $72,000 payable to Transport by Colonial in return for a proportionate share of the future premium income from the block of policies, and a reinsurance premium of $851,398[4] was paid by Transport to Colonial for assuming Transport's liability for the reserves attributable to the 3.6 percent share of the reinsured policies.
 
 
 10
 Under the modified agreement, Colonial acquired an additional 39 percent share of the block of policies and agreed to pay consideration of $780,000 as a ceding commission to Transport for the right to a 39 percent of Transport's future premium income. No reserves were shifted to Colonial, therefore no initial reinsurance premium was required. After netting the amounts payable to each party, $602 (without interest) was paid by Colonial to Transport on October 5, 1976.
 
 
 11
 Transport retained all the records regarding the block of policies and continued to process and pay all claims. Transport was to pay Colonial its percentage of the income from the reinsured policies under the new insurance agreements and Colonial was to then reimburse Transport for that portion of the expenses and benefit payments attributable to Colonial's share of those policies. Transport was also to have the right to regain the business on a scheduled basis.
 
 
 12
 In both the 1975 and 1976 modified coinsurance agreements, Colonial and Transport consented to the application of the rules for the optional tax treatment of policies reinsured as provided by section 820 of the Internal Revenue Code of 1954 (26 U.S.C.) and Section 1.820-2 of the Treasury Regulations on Income Tax (26 C.F.R.).[5] As a result, Transport's retention of the reserves applicable to taxpayer's share of the reinsured policies was treated for federal income tax purposes as being solely custodial for the benefit of Colonial. Consequently, the modified coinsurance transactions were treated in the same manner as the conventional coinsurance transactions on Colonial's income tax returns for these years.
 
 
 13
 Colonial on its income tax returns for 1975 and 1976, recognized as income pursuant to Code Section 809(c)(1) the gross amount of consideration received, or deemed received, from Transport for assuming liability for the indemnified policies and deducted the corresponding amounts of reserve liabilities attributable to its share of the reinsured policies under all four agreements pursuant to Section 809(d)(2). Colonial, additionally deducted the ceding commissions paid to Transport in the amounts of $680,000 for 1975 and $852,000 for 1976, along with the finder's fee of $13,600 for the year 1975, as "other deductions" pursuant to section 809(d)(12) of the Code. As a result of these transactions, Colonial reported an immediate tax loss of $693,600 for 1975 and $852,000 for 1976, which reduced its gains from operations by the corresponding amounts.
 
 
 14
 The Tax Court held, as it also held in Beneficial Life Ins. Co. v. Commissioner, 79 T.C. 627 (1982), that Colonial was entitled to an immediate deduction for such ceding commissions in the case of indemnity insurance transactions such as the ones involved here. The Tax Court did recognize that in the case of assumption reinsurance transactions, that such commissions would have to be amortized over the estimated life of the policies.
 
 II
 
 15
 Colonial, as a life insurance company during the years 1975 and 1976, was taxable under sections 801 through 820 of the Internal Revenue Code. In this case, our primary concern is with the computation of the adjusted premium components of the "gain or loss from operations," under Section 809(c)(1), as affected by the ceding commissions paid by Colonial to Transport.
 
 
 16
 We have previously attempted to clarify the distinctions between the various forms of coinsurance agreements. A closer examination of the coinsurance agreements in question, reveals the modified coinsurance agreements were not pure. They were a variation in that the parties consented to treatment under Section 820 of the Code, which effectively permitted the parties to treat the modified coinsurance agreements as if they had instead entered into conventional coinsurance agreements. Although Transport retained the assets and maintained the proper reserves, Transport was deemed to have done so in a custodial capacity. Thus, for tax purposes the same shift in reserves (and assets) from Transport to Colonial is deemed to have occurred in the two modified coinsurance transactions as actually occurred in the two conventional coinsurance transactions in question. This is relevant because all four reinsurance transactions are treated as though they were conventional coinsurance transactions.
 
 
 17
 It is a fundamental rule that an amount expended to acquire an asset or economic interest, benefit or advantage with an income producing life extending substantially beyond the current taxable year may not be expressed in the year of payment but must be depreciated or amortized over its useful life. See Commissioner v. Idaho Power Co., 418 U.S. 1, 12, 94 S.Ct. 2757, 2764, 41 L.Ed.2d 535 (1974). Therefore, without a clear difference in the statute for treatment of assumption reinsurance contracts and indemnity reinsurance contracts, we must apply a "general" tax rule. We are fortunate to have had the Eighth Circuit recently decide two cases with very similar issues. See Modern American Life Ins. Co. v. Commissioner, 830 F.2d 110 (8th Cir.1987) (modified reinsurance agreement), and Prairie States Life Ins. Co. v. United States, 828 F.2d 1222 (8th Cir.1987) (conventional reinsurance agreement). In Modern American, at 114 the court held:
 
 
 18
 Because no statutory basis exists for allowing the ceding commission to be deducted as a current expense, the court resorts to generally recognized tax principles to determine the proper treatment of this payment. These principles dictate that costs incurred in the acquisition of an economic interest with an income-producing life extending substantially beyond the taxable year may not be expensed but must be depreciated or amortized over useful life of the interest acquired.
 
 
 19
 In Prairie States at 1234 the court held,
 
 
 20
 [T]axpayer may not reduce its income by treating the ceding commission either as a reduction of income under Section 809(c)(1) for 'consideration arising out of reinsurance ceded,' or as an underwriting expense deductible under Section 809(d)(12). Rather, taxpayer must amortize the commission as the cost of acquiring an income-producing asset with a useful life extending substantially beyond the current taxable year.
 
 
 21
 We believe both cases were well reasoned. As we previously stated, the Tax Court correctly identified that in the case of an assumption reinsurance agreement, the ceding commissions would be amortized for the life of the policy. Although our case involves an indemnity reinsurance agreement, this circuit has rejected an argument for allowing full deduction of the ceding commissions in an assumption reinsurance agreement with reasoning that is applicable here. See Southwestern Life Ins. Co. v. United States, 560 F.2d 627, 640-41, (5th Cir.1977) cert. denied, 435 U.S. 995, 98 S.Ct. 1647, 56 L.Ed.2d 84 (1978).
 
 In Southwestern Life at 641 we stated:
 
 22
 The taxpayer's effort to equate the current deductibility of commissions paid in the life insurance industry to agents who put new policies on the books of the company with the payment of $9,800,000 for the acquisition of some 100,000 outstanding policies is not an apt comparison. Atlantic has already paid commissions to its agents for the acquisition of these same policies and the value of the policies to the taxpayer here in no way represents the cost of putting the business on the books of the company. It represents instead, an estimate of the current value to the taxpayer that is represented by having these policies on its books with the expectation of the continuing premiums to be paid in the future.
 
 III
 
 23
 In conclusion, we do not read the statute to treat assumption reinsurance agreements any different than indemnity reinsurance agreement. Therefore, we are holding as the Eighth Circuit held that these ceding commissions paid, including the finder's fee, must be depreciated or amortized over the useful life of the interest acquired.[6] The Tax Court is REVERSED with orders to enter judgment consistent with this opinion.
 
 
 
 [1]
 The Commissioner also sought to disallow a "finder's fee" ($13,600) paid by Colonial to Transport Life Insurance Company in 1975
 
 
 [2]
 An insurance company may want to reinsure its risks for a number of reasons including the diversification of its business, the acquisition of another insurance company indirectly through the acquisition of its business, the avoidance of a concentration of risk in one geographic area or line of business, and relief from the surplus drain that may occur as a result of the heavy expenses and the necessity of establishing reserves connected with newly written policies
 
 
 [3]
 This figure was calculated from the conventional agreement which specifically called for payment to taxpayer in an amount equal to the new reserves attributable to the risks reinsured
 
 
 [4]
 This figure was calculated similar to the 1975 conventional agreement in an amount equal to the mean reserves attributable to the risks reinsured
 
 
 [5]
 There were substantial revisions by Title II, Section 211(a) of the Deficit Reduction Act of 1984, Pub.L. No. 98-369, 98 Stat. 494, 720, but the revisions were not in effect during the years in question. Citations to the Internal Revenue Code and Treasury Regulations are from the versions that were in effect during the years in question
 
 
 [6]
 The parties stipulated to a seven year life of the policies to be amortized on a straight line basis