529 So.2d 169 (1988)
ESTATE OF Ethel Irene OSBORN
v.
GERLING GLOBAL LIFE INSURANCE COMPANY, et al.
No. 57651.
Supreme Court of Mississippi.
May 11, 1988.
As Modified on Denial of Rehearing July 27, 1988.
William Lee Watt, Roberts & Clisby, Oxford, for appellant.
Michael S. Allred, Satterfield & Allred, Jackson, for appellee.
En Banc

ON PETITION FOR REHEARING
ZUCCARO, Justice, for the Court:
This case is an appeal from the Circuit Court of Montgomery County, where on June 17, 1986 a summary judgment was entered dismissing the complaint of the Estate of Ethel Osborn against Gerling Global Life Insurance Company. The Estate of Ethel Osborn appeals this decision. We reverse.

FACTS
On November 9, 1982, Ethel Osborn bought a health insurance policy from State Security Life Insurance Company (hereinafter State Security). The term of the policy was November 25, 1982 through May 25, 1983. By renewal, the policy term was extended through November 25, 1983.
The financial base of State Security was shaky at best, and there existed constantly questions concerning its ability to pay the claims of policyholders. Consequently, Insurance Commissioner George Dale demanded that State Security show cause why its license to sell insurance in Mississippi should not be revoked. In response to the Insurance Commissioner's demands, State Security began to negotiate a reinsurance agreement with Gerling Global Life Insurance Company (hereinafter Gerling *170 Global). While these negotiations were in process, the president of State Security was required by Dale to pledge a personal letter of credit in the amount of $250,000 for the protection of policyholders. On July 15, 1983, State Security and Gerling Global entered into an agreement whereby Gerling Global would coinsure a portion of State Security's risks on all of its accident and health insurance policies. It is this reinsurance agreement that forms the basis for the present case.
On August 3, 1983, Ethel Osborn was found to have a malignant cancerous growth in her pancreas (metastatic adenocarcinoma). As a result of this condition, Osborn was hospitalized for sixty-five (65) days between July 25 and October 21, 1983. The claims of Osborn for her bills and expenses resulting from the infliction were ultimately denied by State Security.
On March 1, 1984, Osborn filed suit against State Security, its agents, and Gerling Global for $25,256.45 in compensatory damages plus $2,500,000 in punitive damages. Subsequently, Osborn died on September 14, 1984, but her suit, which forms the basis for the present appeal, was revived by her estate. Further, the axe of financial instability finally fell on State Security, and it was declared insolvent by the Insurance Commissioner on October 12, 1984. State Security was placed into receivership by the Chancery Court of Rankin County, and Osborn's lawsuit, like all other suits against State Security, was stayed in order to allow the receiver to assume control of the business. See State Security Life Insurance Co. v. State, 498 So.2d 825 (Miss. 1986).
On November 4, 1985 Gerling Global filed its motion for summary judgment on the grounds that appellant had failed to state a claim upon which relief could be granted. The trial court granted Gerling Global's motion holding:
(1) Mrs. Osborn did not have any privity of contract with Gerling Global and therefore cannot base any claim against Gerling Global based on breach of contract, and
(2) Mrs. Osborn cannot maintain any claims based on a third party beneficiary because the reinsurance contract was not intended to benefit Mrs. Osborn or any other insured of State Security.
It is this adverse decision that the Estate of Osborn now appeals.

I. DID THE LOWER COURT ERR IN HOLDING THAT THE SUBJECT INSURANCE AGREEMENT WAS A TRUE CONTRACT OF REINSURANCE SO AS TO DENY OSBORN A DIRECT RIGHT OF ACTION AGAINST GERLING GLOBAL?
The July 15, 1983 insurance agreement reached by State Security and Gerling Global, entitled "Reinsurance Agreement," was entered into solely for the purpose of allowing State Security to continue writing insurance policies in the State of Mississippi. The obvious reason for Insurance Commissioner Dale requiring State Security's procuring additional resources was to protect policyholders. In the present case, the lower court determined that appellant, just such a policyholder, could not directly sue Gerling Global on the subject insurance contract due to it being a "reinsurance" agreement.
In determining whether the lower court reached the right conclusion of law, we recognize that true "reinsurance" is a very specialized type of insurance in which, "one insurer for a consideration contracts with another to indemnify it against loss or liability by reason of a risk which the latter has assumed under a separate and distinct contract as the insurer of a third person." J. Appleman, Insurance Law and Practice § 7693 at 523 (1976). Reinsurance is a process by which an insurance company reduces the extent of its possible loss under any issued policies by distributing all or part of its potential loss to another insurance company. Fontenot v. Marguette Casualty Co., 258 La. 671, 247 So.2d 572 (1971). More specifically, it has been stated that:
The vital distinction between reinsurance and liability insurance is that reinsurance indemnifies the insurer for a loss which *171 is actually sustained, whereas liability insurance is protection against the liability of an insured. (Emphasis in original)
247 So.2d at 576-577.
As a general rule, since true "reinsurance" contracts are contracts of indemnity, they are not enforceable by original insureds, such as Osborn, because original insureds are not in privity of contract with the reinsurer. Mosely v. Liverpool & London & Globe Ins. Co., 104 Miss. 326, 61 So. 428 (1913). There is, in the ordinary reinsurance contract, no privity which would enable the insured to bring an action against the insurer. J. Appleman, Insurance Law and Practice § 7694 at 528-529 (1976); 46 C.J.S. Insurance § 1232 at 217-218 (1946). If this general rule applied here, Osborn would have no direct action against Gerling Global, and the trial court's actions would have been proper. However, a reinsurance agreement may be written in such form and with such provisions so as to create a liability on the part of the reinsurer directly to the original insured. First National Bank of Kansas City v. Higgins, 357 S.W.2d 139, 143 (Mo. 1962); Homan v. Employers Re-Insurance Corporation, 136 S.W.2d 289 (Mo. 1939). Further, Higgins states:
In any case where the contract of reinsurance is more than a mere contract of indemnity, and is made for the benefit of the policyholders of the reinsured, and by it the reinsurer assumes the liability of the latter on its policies, the liability of the reinsurer may be directly enforced by the insured, or by his privies. (Emphasis added)
Higgins, 357 S.W.2d at 143 quoting Couch Encyclopedia of Insurance Law, § 2276 at 7434.
As seen above, the critical inquiry that must be addressed in the present case is whether the subject "reinsurance" agreement provided for indemnity against an actual loss suffered by State Security, or on the other hand whether the agreement was one indemnifying State Security against the incurring of liability. We decide this question by reference to the words used in the July 15, 1983 agreement. Turning to those words, we note that the first line of the first full paragraph provides that, "State Security desires to coinsure a portion of its risks on all its accident and health insurance policies in force." (Emphasis added) Further, the agreement is replete with instances where the term "coinsurance" is used to describe the duty undertaken by Gerling Global. Coinsurance is defined as "a relative division of risk between the insurer and the insured." Black's Law Dictionary, 236 (5th ed. 1979). Usage of this terminology indicates that Gerling Global, in making the contract, insured a portion of the risks, or liabilities, that State Security might incur and not just its actual losses.
Additionally, in line with the usage of the "coinsurance" verbiage, pertinent sections of the subject "reinsurance" agreement provide that:
1. "Gerling" does hereby assume on a quota share coinsurance basis 80% of all liabilities with respect to accident and health policies coinsured under this Agreement. The maximum percentage assumed by "Gerling" will be such that the incurred but not reported claims reserve and unearned premium reserves will be less than $700,000.
3. "Gerling" shall be liable to "State Security" for its share of the benefits reinsured hereunder to the same extent as "State Security" is liable to the insured for such benefits and all reinsurance shall be subject to the terms and conditions of the policy under which "State Security" shall be liable.

4. Whenever a claim is made under a policy of "State Security", which has been reinsured hereunder, whether the claim is under the strict policy conditions or under compromise or otherwise, the settlement made by "State Security" shall be unconditionally binding on "Gerling" to the maximum extent of "Gerling's" liability.

5. Any suit or claim may be contested or compromised on the part of "State *172 Security" and in the case of reduction of the claim made upon "State Security", "Gerling" and "State Security" shall participate in such reduction in proportion to their respective net liabilities. If more than one policy is in force on the life of the insured, the liability of "Gerling" shall be determined on the basis of the settlement of the particular policy reinsured by it. (Emphasis added)
As can be seen above in paragraph 1, Gerling Global assumed on a "coinsurance" basis the liabilities of State Security. Paragraphs 4 and 5 specify that any "settlement" of a claim upon which State Security is liable will be unconditionally binding on Gerling Global. As stated previously, parties are free to draft contracts which indemnify against liability rather than loss. Higgins, supra; Homan, supra. Such extensive use of the above emphasized terms can lead us to conclude only that Gerling Global has in fact agreed to share and indemnify the liabilities of State Security. Where such an insurance agreement is drawn so as to indemnify against liability, an original insured (Osborn) may bring a direct action against the insurer (Gerling Global) based on a third-party beneficiary theory. Id.
The proposition that original insureds should benefit from the insurance agreement is reinforced by the language of paragraph 3, as set out above, which provides that Gerling Global's liability is "subject to" the terms and conditions of policies under which State Security is "liable". Again, the agreement requires only liability on the part of State Security and not an actual loss. The "subject to" language used in paragraph 3 in essence means that Gerling Global's liability is controlled by the terms and conditions of Osborn's policy, allowing a direct cause of action, when reasonably mandated. Higgins, supra; Homan, supra. The fact that Gerling Global, under paragraph 6 of the insurance agreement, is directed to make payments only to State Security does not act to create a pure "reinsurance"/indemnity-against-loss agreement so as to overcome the other provisions discussed above setting out a "coinsurance"/indemnity-against-liability contract. Appellant has a direct course of action against Gerling Global, and the lower court erred in denying such.

II. WHAT EFFECT DOES PARAGRAPH 17 OF THE SUBJECT REINSURANCE AGREEMENT HAVE ON APPELLANT'S ACTION AGAINST GERLING GLOBAL?
Paragraph 17 of the insurance agreement now in question provides in relevant part as follows:
17. In the event of insolvency of "State Security", the liability of "Gerling" for claims shall continue to be determined by all of the terms, conditions and limitations under this Agreement, but said "Gerling" will make settlement of claims.

(a) directly to the liquidator, receiver or statutory successor of "State Security", and
(b) without diminution because of the insolvency of "State Security". (Emphasis added)
As can clearly be seen, the contract entered into by Gerling Global and State Security explicitly provides that in the event of State Security's insolvency, Gerling Global is liable for payments on claims only to the liquidator, receiver, or statutory successor of State Security. Where an insurance contract is clear and unambiguous, it should be construed as written just as any other contract. Insurance Company of North America v. Deposit Guaranty National Bank, 258 So.2d 798, 801 (Miss. 1972). As previously stated, State Security was declared insolvent by the insurance commissioner on October 12, 1984, and was placed in receivership by the Chancery Court of Rankin County. Thus, under the plain language of paragraph 17 of the insurance agreement, Gerling Global is obligated to make payments on the claims of appellant, as well as other similarly insureds only to the receiver of State Security as appointed by the Chancery Court of Rankin County.
*173 In Section I, supra, we held that appellant, due to the terminology used in the "reinsurance" contract, had a direct cause of action against Gerling Global, and that the lower court erred in granting summary judgment. We assume that there are other similarly situated original insureds of State security with claims much the same as the one involved in the case sub judice.[1] Consequently, due to the mandates of paragraph 17, of the so called "Reinsurance" Agreement we remand this case to the Circuit Court of Montgomery County directing that Court transfer appellant's cause of action to the Chancery Court of Rankin County so that State Security's receiver may process the claim. Further, after transfer of the present case, State Security's receiver should give notice to all claimants to file their claims against Gerling Global in the Chancery Court of Rankin County within such time as the Court may determine without unusual delay. All suits in existence, or presently pending by original insured's of State Security, against Gerling Global, which are brought under the July 15, 1983 "Reinsurance" Agreement should be immediately transferred to the Chancery Court of Rankin County, where the claims may be considered and adjudicated.
The Chancery Court of Rankin County is instructed, with regard to all of the above claims, to:
(1) Consider the liability vel non of Gerling Global under the agreement;
(2) Establish the limits of Gerling Global's liability; and
(3) After hearing the above claims, is directed to make an award on each valid claim in pari passu, from the sum owed by Gerling Global due to its liability under the contract with State Security, as well as from other assets of State Security which might be available to the receiver.
Provided, however, that nothing said herein shall preclude Gerling Global's assertion of any remedy, defense or process available to it under the agreement and obtaining an adjudication thereon; nor shall anything said herein preclude State Security's receiver or the receivership court exercising such discretionary authority over the conduct of future litigation as would ordinarily and otherwise by law be vested in them.
PETITION FOR REHEARING DENIED; ORIGINAL OPINION MODIFIED. REVERSED AND REMANDED WITH INSTRUCTIONS.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
NOTES
[1] That there are other insureds similarly situated is a fact within our actual and judicial knowledge. See the records and prior course of proceedings in Mississippi Insurance Guaranty Association v. Vaughn, 529 So.2d 540 (Miss. 1988); and State Security Life Insurance Co. v. State, 498 So.2d 825 (Miss. 1986), each of which arises out of the failure of State Security.