Carolyn CLEVELAND, Administratrix of the Estate of Billy D. Cleveland, Deceased Plaintiff

v.

COMMONWEALTH NATIONAL INSURANCE COMPANY, a Mississippi Corporation and Central United Life Insurance Company Defendants

No. CIV.A. 3:03CR143LN.

United States District Court, S.D. Mississippi, Jackson Division.

April 1, 2003.

James W. Nobles, Jr., Jackson, for Plaintiff or Petitioner.

Robert T. Higginbotham, Jr., James Wilbourn Vise, Massey, Higginbotham & Vise, PA, Jackson, for Defendant or Respondent.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of plaintiff Carolyn Cleveland to remand to the Circuit Court of Hinds County, Mississippi. Defendant Central United Life Insurance Company (Central United) opposes the motion, and the court, having considered the parties' memoranda and submissions, concludes that the motion should be granted.

Cleveland, in her capacity as Administratrix of the Estate of Billy Cleveland, filed the present action on December 31, 2002 in state court to recover nearly $375,000 in policy benefits alleged to be owing, together with punitive damages for defendant's alleged bad faith denial of those benefits under a cancer policy issued to Billy Cleveland in 1992 by Commonwealth National Life Insurance Company (Commonwealth).[1] Plaintiff, a Mississippi resident, named as defendants both Commonwealth, which is a Mississippi insurer, and Central United, a Texas insurer which plaintiffs allege is liable on the policy by virtue of a 1997 "Assumption Reinsurance Agreement" by which Central United agreed to assume the Commonwealth's rights, title and obligations on Mr. Cleveland's Commonwealth policy.

On January 30, 2003, Central United removed the case to this court on the basis of diversity jurisdiction, asserting that Commonwealth, the nondiverse defendant, has been fraudulently joined. Plaintiff has moved to remand, contending that her complaint sets forth viable claims against Commonwealth and that the court therefore lacks subject matter jurisdiction.

■■■ The defendant, as the removing party, bears the burden of establishing the existence of federal jurisdiction, and where charges are made of fraudulent joinder, the defendant also bears the burden of establishing the claimed fraud by demonstrating that "there is no possibility that [the plaintiff] would be able to establish a cause of action against [the nondiverse defendants] in state court." *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir.1992). In evaluating fraudulent joinder claims, the court must "resolve all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party." *Id.* The court must then determine "whether that party has any possibility of recovering against the party whose joinder is questioned." *Id.* Finally, while the court may not pretry substantive issues in disposing of a fraudulent joinder claim, it is authorized to use a summary judgment-like procedure to pierce plaintiff's pleadings. *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir.), *cert. denied*, 498 U.S. 817, 111 S.Ct. 60, 112 L.Ed.2d 35 (1990).

■■■ In support of its contention that no reasonable possibility of recovery exists against Commonwealth, Central United relies upon the 1997 "Assumption Reinsurance Agreement" entered between it and Commonwealth. Under the terms of that agreement, Commonwealth transferred all of its policies in Mississippi to Central United, effective October 1, 1997, and Central United reinsured and assumed all the contractual liabilities of Commonwealth under those policies, including Mr. Cleve-

---

**1.** Subsequent to issuance of that policy, Mr. Cleveland developed, and eventually suc-

cumbed to, Non–Hodgkins Lymphoma.

land's policy. Central United contends that by virtue of this agreement, and Mr. Cleveland's assent thereto, Commonwealth is no longer a party to Mr. Cleveland's insurance contract and hence is not a proper party to this action.

The court observes initially that a choice of law provision in the subject reinsurance agreement provides that Texas law applies to interpretation of the agreement. Citing this provision, Central United contends that Texas substantive law applies to determine the fraudulent joinder issues presented, though it also asserts that the issue of whether Mississippi or Texas substantive law applies is largely immaterial inasmuch as Texas and Mississippi law are essentially the same regarding the enforceability of reinsurance assumption agreements. That does indeed appear to be the case, and the court therefore addresses the issues by reference to the law of both states (or rather, by reference to the absence of definitive law from these states on a material issue).

■ As all courts recognize, there are "basically two types of reinsurance—assumption reinsurance and indemnity reinsurance." *See Colonial American Life Ins. Co. v. C.I.R.*, 843 F.2d 201, 202 (5th Cir.1988). In the former, "the reinsuring company takes over for the initial insurer and becomes directly liable to the policyholders," *id.*, whereas in the latter, which is often referred to as "true" reinsurance, the reinsuring company merely indemnifies the primary insurer against loss rather than against liability, *id.* The Texas courts have noted this distinction. For example, in *Wheeler v. Metteauer,* upon which Central United relies, the Texas Court of Civil Appeals, applying Texas law, stated,

It is true that in a technical or strict sense the word 'reinsurance' may be used to signify an agreement by one insurance company to indemnify another

wholly or partially against loss or liability by reason of a risk that the latter has assumed under a separate and distinct contract as insurer of a third person.... However, the defendant is mistaken in the proposition that this strict or technical meaning of the word 'reinsurance' is the only sense in which the term is used in the insurance business. 'Reinsurance' is also used to denote a contract between two insurers by which one assumes the risks of the other and becomes substituted to its contracts so that on the assent of the original policyholders the liability of the first insurer ceases and that of the second is substituted.

*Wheeler,* 283 S.W.2d 95, 99 (Tex.Civ.App. 1955) (*citing* 46 C.J.S., Insurance, Subd. XIX, § 1220 *et seq.,* p. 195) (additional citations omitted). The Mississippi Supreme Court similarly observed in *Estate of Osborn v. Gerling Global Life Ins. Co.,* that,

[a]s a general rule, since true "reinsurance" contracts are contracts of indemnity, they are not enforceable by original insureds, such as Osborn, because original insureds are not in privity of contract with the reinsurer. *Moseley v. Liverpool & London & Globe Ins. Co.,* 104 Miss. 326, 61 So. 428 (1913). There is, in the ordinary reinsurance contract, no privity which would enable the insured to bring an action against the insurer. J. Appleman, Insurance Law and Practice § 7694 at 528–529 (1976); 46 C.J.S. Insurance § 1232 at 217–218 (1946).... However, a reinsurance agreement may be written in such form and with such provisions so as to create a liability on the part of the reinsurer directly to the original insured. *First National Bank of Kansas City v. Higgins,* 357 S.W.2d 139, 143 (Mo.1962); *Homan v. Employers Reinsurance Cor-*

*poration,* 345 Mo. 650, 136 S.W.2d 289 (1939).

*Osborn,* 529 So.2d 169, 171 (Miss.1988). The court in *Osborn* went on to explain the "form" in which a reinsurance contract may be written to achieve direct liability on the part of the reinsurer, stating,

> In any case where the contract of reinsurance is more than a mere contract of indemnity, and is made for the benefit of the policyholders of the reinsured, and by it the reinsurer assumes the liability of the latter on its policies, the liability of the reinsurer may be directly enforced by the insured, or by his privies. (Emphasis added)

*Id.* at 171 (*citing Higgins,* 357 S.W.2d at 143, quoting Couch Encyclopedia of Insurance Law, § 2276 at 7434).

▆▆▆ Undeniably, the agreement at issue in the case at bar qualifies as an "assumption reinsurance" agreement, and is not merely a contract of indemnity. The contract specifically provides that

> the Company (Commonwealth) hereby sells, cedes, transfers to, assigns and reinsures with Reinsurer and the Reinsurer hereby purchases, undertakes, reinsures and assumes by means of assumption reinsurance, all of the contractual rights, obligations, liabilities and risks of the Company under or with respect to the Coinsured Policies then being assumed. It is the intent of the parties to this Agreement to accomplish ... a complete transfer of all of the Company's contractual rights, obligations, liabilities and risks with respect to the Coinsured Policies then being assumed to the Reinsurer, with the Result that the Reinsurer, as transferee, in all respects and conditions, shall succeed the Company as the insurer under the terms and provisions of each of the Assumed Policies, as though the Reinsurer had originally issued such Assumed Policies, and to transfer to the Reinsurer, as

administrator, full and complete responsibility for servicing and administering the Assumed Policies in accordance with the terms and conditions of this Agreement.

Other similar provisions appear throughout the Agreement, and leave no doubt that this is, in the words of *Wheeler,* "a contract between two insurers by which one assume[d] the risks of the other," *Wheeler,* 283 S.W.2d at 99, or in the words of *Osborn,* a contract "made for the benefit of the policyholders of the reinsured" by which "the reinsurer assume[d] the liability of the latter on its policies," *Osborn,* 529 So.2d at 171. The fact that the agreement at issue is an assumption reinsurance agreement does not carry the day for Central United, however, for as courts and commentators uniformly recognize,

> Regardless of the nature of the reinsurance contract, the original insurer remains liable to the original insured, in the absence of a novation; that is, an original insurer cannot, without the knowledge or consent of the insured, enter into any contract of reinsurance with another company which abrogates or alters the rights of the insured as against it, the insurer.

19 Couch on Insurance 2d § 80:64, at 670 (Rev. ed.1983); *see Wheeler,* 283 S.W.2d at 99 (in assumption reinsurance, "*on the assent of the original policyholders* the liability of the first insurer ceases and that of the second is substituted") (emphasis added). That is to say,

> An insurer may not transfer its liability to another company and compel its policyholders to accept the new company as their insurer. When another insurance company assumes the insurer's obligations, the original insurer is not relieved of its liability to the insured without the consent of the insured to substitute another insurer. The policy-

holder may elect whether to repudiate or accept the reinsurance agreement. Although an assumption agreement is not binding on a policyholder, once he has accepted it he is bound by its terms.

*Security Ben. Life Ins. Co. v. F.D.I.C.*, 804 F.Supp. 217, 226 (D.Kan.1992) (citing *Appleman on Insurance* §§ 7745, 7755, 7756).

The parties here acknowledge this principle, as one, plaintiff, insists that the insured, Billy Cleveland, did not consent to the assumption agreement, and the other, Central United, insists that he did. On this point, plaintiff argues that Billy Cleveland was "never consulted regarding the assumption agreement[;] he was simply sent notice of its existence and told to send his premium payments to Central United." Central United, on the other hand, declares that Mr. Cleveland "assented to Central United's assumption of all rights, duties, obligations and liabilities under the policy by continuing to pay the annual policy premiums to keep the policy in force and effect after it was assumed by Central United."

The facts relative to this issue are not in dispute. The parties agree that Billy Cleveland was notified by letter of the reinsurance agreement in 1997, and that he was sent a "Certificate of Assumption" in March 1998, which recited that Central United had assumed all of Commonwealth's contractual liabilities, and which advised Mr. Cleveland that

> from and after the date hereof, you should submit all claims under this Policy, whenever incurred, and all premiums due under this Policy, to Central United,

and further advised that "Central United will be responsible for all liabilities related to the policies and for all administrative services related to the policies." And it appears agreed that after receipt of the Certificate of Assumption, Mr. Cleveland's premiums were sent to Central United.

However, the question of what sort of "assent" on the part of a policyholder is required to achieve a novation which relieves the original insurer of liability on the insurance contract has not been addressed by either the Texas or Mississippi courts which is to say, there is nothing in the jurisprudence of either state that provides an answer to the question whether Mr. Cleveland's actions could be held or found to constitute the requisite assent to relieve Commonwealth of any potential liability on the insurance contract.[2] Some courts have indeed held that a policyholder's payment of premiums to the reinsurer is sufficient. *See, e.g., Epland v. Meade Ins. Agency Assocs., Inc.*, 564 N.W.2d 203, 207 (Minn. 1997) (holding as a matter of law that insureds consented to assumption agreement by payment of premiums to reinsurer, thus releasing original insurer from its obligation under the policy); *State Dept. of Public Welfare v. Central Standard Life Ins. Co.*, 19 Wis.2d 426, 435, 120 N.W.2d 687, 692 (1963) (holding that insured's retention of original insurance policy accompanied by silence after receiving certificate of assumption and his payment to reinsurer of 15 premiums after notification of transfer of liability by reinsurer constituted an acceptance of the assumption agreement). However, this court cannot conclude with the requisite degree of certainty

---

**2.** Citing *Andrew Jackson Life Ins. Co. v. Williams*, 566 So.2d 1172, 1178 (Miss.1990), Central United argues that under Mississippi law, the payment of premiums constitutes consent to the assumption. That is not what the court held in *Williams*. Rather, the court held that acceptance was manifested through

an insured's "(1) remittance of seven premiums deducted from his paycheck, *and (2) completion of the application which contained the essential terms.*" *Id.* (emphasis added). The court did not hold that remittance of the premiums alone would have sufficed.

that the Mississippi or Texas courts would consider this sufficient to relieve Commonwealth of liability on the policy.[3]

Therefore, this court's obligation to resolve uncertainties in the controlling state law in favor of remand, see, *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir.1981) (requiring that court "resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff," as well as any disputed facts), the court must conclude that Central United has failed to demonstrate that no possibility of recovery exists against Commonwealth in the present case. Complete diversity of citizenship does not exist among the properly joined parties to this action, and the motion to remand will therefore be granted.[4]

In light of the foregoing, it is ordered that the motion to remand is granted.

---

**3.** It would seem that regardless of whether Texas law might apply to other issues respecting the subject reinsurance agreement, Mississippi law would apply on the consent issue. By its terms, the Assumption Reinsurance Agreement contemplates and addresses the issue of insured consent, providing in ¶ 2.2 that "[t]he reinsurer shall be responsible for obtaining all ... Required Assumption Consents," that term being defined as

> Any consent of any Policyholder to the assumption of a Coinsured Policy by the Reinsurer on an assumption reinsurance basis that may be required under applicable in-

surance laws or regulations in any jurisdiction in which the Coinsured Policies were issued or, as applicable, where such Policyholders reside.

**4.** Central United also argues that the execution of the reinsurance agreement gave rise to a valid statute of limitations defense on its part, given that it could face no liability after the 1997 agreement. The court concludes, for the reasons previously stated, that the law in this context is insufficiently clear to demonstrate that no possibility of recovery exists against Commonwealth.